W. E. KING, EDWARD A. GLASGOW, W. EARL PRIDGEN AND WALKER MATHIS v. FRANK BALDWIN, RALPH I. BASS, F. B. COOPER, JR., FRED E. HARRIS AND HENRY M. MILGROM, BEING ALL THE INDIVIDUAL MEMBERS OF THE BOARD OF COMMISSIONERS OF NASH COUNTY, NORTH CAROLINA; J. CURTIS ELLIS, TAX SUPERVISOR AND TAX COLLECTOR OF NASH COUNTY, NORTH CAROLINA; WILLIS WARD, ASSISTANT TAX SUPERVISOR, NASH COUNTY, NORTH CAROLINA; AND CARROLL-PHELPS APPRAISAL COMPANY

No. 28

(Filed 11 February 1970)

1. Taxation § 25; Administrative Law § 2— ad valorem taxes — undervaluation of rural realty — taxpayers' action — mandamus — exhaustion of administrative remedies

In taxpayers' action seeking (1) a writ of mandamus to compel the county commissioners to revalue all real property in the county at its true value in money and (2) an injunction to restrain the commissioners from assessing real property according to an adopted schedule of values, the taxpayers contending that the schedule undervalued rural property in the county by at least fifty percent, the superior court has no authority to issue mandamus commanding the commissioners to revalue all real property in the county at its true value in money, since taxpayers must first exhaust the statutory administrative remedies in the county board of equalization and review and in the State Board of Assessments; thereafter the taxpayer may resort to the courts, but only to obtain review for errors of law or abuse of discretion by the Board. G.S. 105-327, G.S. 105-329, G.S. 105-275(3). The decision in *Stocks v. Thompson,* 1 N.C. App. 201, is expressly disapproved.

**2. Mandamus § 1— clear legal right — enforcement**
> Mandamus issues only to enforce a clear legal right.

**3. Mandamus § 2— control of administrative discretion**
> Mandamus will not lie to control the discretion vested in a governmental agency or official.

**4. Mandamus § 1— when issued — alternative remedies**
> Mandamus cannot be employed if other adequate means are available to correct the wrong for which redress is sought; e.g., when the legislature has provided an effective administrative remedy.

**5. Taxation § 25— ad valorem taxes**
> The assessment, listing, and collection of ad valorem taxes is governed by the Machinery Act, G.S. 105-271 et seq.

**6. Statutes § 5— presumption that legislature acted with common sense**
> It is presumed that the legislature acted in accordance with reason and common sense and that it did not intend an unjust or absurd result.

**7. Taxation § 25— ad valorem tax — taxpayers' remedy — statutory agencies — exhaustion of remedies**
> By virtue of the statutes which provide for appeals to the county board of equalization and to the State Board of Assessment, the legislature has provided adequate means whereby the individual taxpayer may contest not only the valuation which the county commissioners have placed upon his own property but the entire tax list or assessment roll, and the taxpayer must exhaust this administrative remedy before he can resort to the courts. The decision in *Stocks v. Thompson*, 1 N.C. App. 201, is expressly disapproved.

MOORE, J., did not participate in the consideration or decision of this case.

APPEAL by defendants from *Hubbard, J.*, May 1969 Civil Session of NASH, certified pursuant to G.S. 7A-31 for review before determination by the Court of Appeals. This appeal was docketed and argued in the Supreme Court as Case No. 61 at the Fall Term 1969.

In this action plaintiffs, resident taxpayers owning real estate in Nash County, seek (1) a writ of mandamus compelling defendants, the county commissioners, tax supervisor and collector, and the assistant tax supervisor, to revalue all real property in the county at its true value in money, and (2) an injunction restraining them from assessing property according to the schedule of values adopted by the commissioners on 6 December 1969.

The following facts are undisputed: On 1 January 1969 Nash County was required by G.S. 105-278 to make the octennial revaluation of its taxable property. As authorized by G.S. 105-291, on 12 September 1967, defendant-commissioners employed Carroll-Phelps

Appraisal Company, expert appraisers, to assist in revaluing approximately 23,000 parcels of land. Appraisal Company's investigation of property and land values in Nash County began in November 1967 and continued through January 1968. Then, after frequent consultations with defendants, Appraisal Company prepared and submitted a uniform schedule of values to be used in appraising rural land. (This schedule is attached to the complaint as Exhibit A.)

The schedule classified rural land as (1) cleared — tillable 1, tillable 2, other; (2) woodland; (3) Swamp or wasteland; (4) homesites. To the base per-acre valuation of any tract of tillable land would be added the value of its tobacco and peanut allotments. Tobacco allotments were appraised at eighty cents per pound and peanut allotments at $300.00 per acre.

In arriving at land values Appraisal Company used three approaches: costs, income, and sales. It first recommended to defendants that tobacco allotments be valued at $1.10 per pound and peanuts at $400.00 per acre. Defendants believed these valuations were too high. In consequence, the value of the tobacco allotment was reduced to eighty cents and peanuts to $300.00, and the schedule (Exhibit A) was adopted by the commissioners on 15 November 1968. Appraisal Company's experts thought this schedule "approximated equality" and told defendants that they were willing to defend it.

Immediately after the adoption of the schedule rural landowners expressed much dissatisfaction. The Farm Bureau requested a hearing, which was held on November 25th. At that time Appraisal Company's representative explained the schedule and the methods by which the valuations were derived. Notwithstanding, the commissioners continued to receive complaints, particularly with respect to the valuations on tobacco and peanut allotments. On 6 December 1968, after another public hearing, the commissioners reduced the valuation of a tobacco allotment to forty cents per pound and of a peanut allotment to $150.00 per acre. They made no change in the base per-acre valuation which they had previously approved.

On 31 December 1968 plaintiffs brought this action. In a lengthy complaint, containing many evidentiary averments, they allege in effect: The schedule of values adopted by defendants on 6 December 1969 undervalued rural land by at least 50%. Tobacco allotments should have been valued at not less than $1.50 a pound and peanuts at not less than $500.00 an acre. In adopting the schedule (Exhibit A), defendant-commissioners acted upon a misunderstanding of the law in that (1) they thought "market-value," as used in G.S. 105-294, was merely one factor to be considered along with those enum-

erated in G.S. 105-295 in determining the tax value of land, (2) they believed that decreasing farm income justified a valuation of tobacco and peanut allotments at less than their true value in money. Defendants knew that the valuations which they adopted would not produce an appraisal of rural property at its fair-market value. They acted arbitrarily, deliberately, and intentionally as a result of economic and political pressures. In consequence, defendants have discriminated against plaintiffs and all other owners of nonrural land, who will be required to bear a disproportionate share of the tax burden.

Answering the complaint defendants aver that the adopted schedule was designed to appraise all property at its true value in money in accordance with G.S. 105-294 and G.S. 105-295. They deny that they acted arbitrarily, unlawfully, and as a result of economic and political pressures.

Appraisal Company, originally made a party-defendant, was dismissed from the action when its demurrer, interposed on the ground that the complaint stated no cause of action against it, was sustained.

At the May 1969 Session, by consent, the case was heard by Hubbard, J., without a jury. Both parties offered evidence. In addition to the facts already stated herein, plaintiffs' evidence — which consisted largely of the adverse examinations of defendants and Mr. Allen G. Carroll, a general partner of Appraisal Company —, tended to show:

No property in Nash County is appraised at its full sales or market value. Rural property is appraised at fifty-five to sixty percent of fair-market value; nonrural property, about ninety percent. In adopting the schedule (Exhibit A) on 6 December 1969, after considering such factors as "dropping farm prices" and the rural taxpayer's ability to pay, defendant-commissioners used their judgment as businessmen and landowners to fix the value of rural land and crop allotments. In the opinion of each defendant the schedule is in accord with the ability of all taxpayers to pay the taxes.

Defendants' evidence, largely repetitive and explanatory of plaintiffs', tended to show: Land appraising, especially mass appraisals, is not an exact science but a matter of personal opinion. Appraisal Company's experts thought that the schedule which defendants adopted on November 15th took into consideration not only the prices at which farmlands were being sold but also the diminution of farm income resulting from increased costs and the "cigarette scare," and it constituted a fair valuation. However, on the basis of further consideration between November 25th and December 6th,

defendant-commissioners felt that Appraisal Company had leaned too heavily on the sales-price approach. The company concedes that if credence is to be given to the income approach the schedule adopted on December 6th results in a reasonable equity in all classes of property, and the reduction to forty cents on tobacco and $150.00 on peanuts was not necessarily wrong. In the opinion of the tax supervisor the schedule of values which the commissioners adopted on December 6th "reflected a reasonable equality as far as it is possible to obtain uniformity in mass tax appraisals."

At the conclusion of the evidence Judge Hubbard overruled defendants' motion for judgment of nonsuit. Thereafter he combined findings of fact and conclusions of law, which we summarize as follows:

(a) On 6 December 1968 defendant-commissioners (and many farmers) were genuinely concerned about the future value of tobacco allotments, and this concern caused them to reduce the valuations which they had adopted on November 25th. However, as of 1 January 1969, these fears had not materially affected the sales price of rural land.

(b) Defendants have appraised no rural land in Nash County at its true and actual value in money as required by G.S. 105-295. (Judge Hubbard stated that he would make no finding as to whether urban property was appraised at its market value.)

(c) In adopting the schedule of values for rural land defendant-commissioners erroneously applied that portion of G.S. 105-295 relating to "probable future income."

(d) The values placed upon tobacco and peanut allotments are so far below their sales value on 1 January 1969 as to render the entire schedule irrelevant.

(e) The court is without authority to change the schedules of values or the appraisal of rural property.

(f) Plaintiffs have no clearly defined and adequate remedy, other than by this action, to force a correction of the assessment of rural land and cause the commissioners to comply with G.S. 105-294 and G.S. 105-278.

Upon the foregoing findings and conclusions Judge Hubbard entered a judgment commanding the commissioners to appraise rural land and all other real property in Nash County at its true value in money and thereafter to correct all listings and appraisals based upon former valuations. He directed them to file with the Clerk of

the Superior Court a certificate of compliance with his judgment not later than 1 February 1970.

Defendants excepted to the judgment and appealed.

*Keel & Keel; Valentine & Valentine; and Joyner, Moore & Howison for defendant appellants.*

*Battle, Winslow, Scott & Wiley and Meadows & Batts for plaintiff appellees.*

*John T. Morrisey, Sr., General Counsel, North Carolina Association of County Commissioners, Amicus Curiæ.*

SHARP, J.

[1]   The first question presented by this appeal is whether the Superior Court had authority to issue a writ of mandamus to compel the county commissioners to revalue all real property in Nash County.

[2-4]   The nature of mandamus and the limitations upon its use have been stated often. *Safrit v. Costlow,* 270 N.C. 680, 155 S.E. 2d 252; *Hospital v. Wilmington,* 235 N.C. 597, 70 S.E. 2d 833; 3 Strong, N. C. Index *Mandamus* §§ 1, 2 (1960); 2 McIntosh, N. C. Practice and Procedure § 2445 (2d ed. 1956). It suffices here to say that mandamus issues only to enforce a clear legal right. The writ will not lie to control the discretion vested in a governmental agency or official. It cannot be employed if other adequate means are available to correct the wrong for which redress is sought. Thus, when the legislature has provided an effective administrative remedy, it is exclusive. *Snow v. Board of Architecture,* 273 N.C. 559, 160 S.E. 2d 719; *Young v. Roberts,* 252 N.C. 9, 112 S.E. 2d 758; *St. George v. Hanson,* 239 N.C. 259, 78 S.E. 2d 885; *Harris v. Board of Education,* 216 N.C. 147, 4 S.E. 2d 328; *Moreland v. Wamboldt,* 208 N.C. 35, 179 S.E. 9; *Hickory v. Catawba Co.,* 206 N.C. 165, 173 S.E. 56; *Bunn v. Maxwell,* 199 N.C. 557, 155 S.E. 250.

At the hearing before Judge Hubbard, plaintiffs' evidence tended to show that in the 1969 revaluation no land in Nash County had been appraised at its true value in money as required by G.S. 105-294, and that all rural property had been grossly undervalued. Defendants' evidence tended to show that, in their opinion, they had appraised all land at its true value "as far as practicable," and that the schedule adopted would result in reasonable equality.

[5]   Plaintiffs are entitled to an adjudication of their charges that rural property has been undervalued and that a disproportionate

share of the tax burden will fall upon urban property owners unless the assessment roll is corrected and inequalities eliminated. Defendants assert, however, that the Superior Court cannot determine this controversy in an action for mandamus; that the legislature has made an administrative agency, the State Board of Assessment (State Board), the arbiter of disputes pertaining to the valuation and assessment of property for ad valorem taxes. To determine which tribunal has jurisdiction of the matters alleged in the complaint, we must review those sections of the Machinery Act (G.S. 105-271 *et seq.*) which govern the assessment, listing, and collection of taxes. *See In Re Appeal of Broadcasting Corp.*, 273 N.C. 571, 160 S.E. 2d 728.

Every eighth year G.S. 105-278 requires each county to revalue and reassess, as of January first, all real property for ad valorem tax purposes "at its true value in money." *True value* is defined as the amount of cash or receivables which can be obtained for property when it is sold in the usual manner. G.S. 105-294. (In other than revaluation years, reassessment is governed by G.S. 105-279. *See In Re Pine Raleigh Corp.*, 258 N.C. 398, 128 S.E. 2d 855.)

Prior to each octennial revaluation it is the duty of the tax supervisor, subject to the review and approval of the county commissioners, to compile "standard uniform schedules of values to be used in appraising real property in the county." Thereafter "a competent appraiser" is required to visit every tract. In fixing its value assessors must consider "its advantages as to location, quality of soil, quantity and quality of timber, waterpower, water privileges, mineral or quarry or other valuable deposits, fertility, adaptability for agriculture, commercial or industrial uses, the past income therefrom, its probable future income, the present assessed valuation, and any other factors which may affect its value." Similarly, appropriate criteria are specified for the appraisal of buildings on the land. G.S. 105-295.

After property has been listed and valued, the county commissioners sit as a board of equalization and review. G.S. 105-327. (In at least five counties a special board of equalization and review has been created by local act.) The board of review is required to hear any taxpayer who considers himself aggrieved in respect to the valuation of his own property *or that of others*. In the performance of its duty to equalize valuations in the county "to the end that all property shall be listed on the tax records at the valuation required by law," the Board is required to increase or decrease the assessed value of any taxable property which, in its opinion, has been returned

below or above its true value. (As to reassessment in other than re-valuation years see G.S. 105-279.)

By complying with the provisions of G.S. 105-329, "[a]ny property owner, taxpayer, or member of the board of county commissioners may except to the order of the board of equalization and review and appeal therefrom to the State Board of Assessment." Prior to 14 February 1969 each taxpayer or ownership interest was required to appeal separately unless the State Board consented to joint appeals. Since the passage of Ch. 7 § 2, S. L. of 1969, however, "taxpayers and ownership interest may file separate and distinct appeals or joint appeals at the election of one or more of the taxpayers."

The State Board is required by G.S. 105-275 to "exercise general and specific supervision over the valuation and taxation of property throughout the State," and it is constituted "a State Board of Equalization and Review of valuation and taxation of property in this State." It is authorized to employ valuation and appraisal specialists and such other assistants as may be needed for the performance of its duties. G.S. 105-273(c). It has access to all municipal, county, and departmental records and may prescribe the forms and methods of record-keeping. G.S. 105-276. The Board's administrative assistant, *inter alia,* is required to prepare and distribute instructions to the boards of county commissioners and all those engaged in the valuation and assessment of property; to advise them with reference to all their duties; and to make studies of the ratio of appraised value of real and personal property to market value in each county in the year of revaluation. G.S. 105-277.1.

In addition to the right of appeal conferred in G.S. 105-329, the State Board is empowered by G.S. 105-275(3) "[t]o hear and adjudicate appeals from the boards of county commissioners and county boards of equalization and review as to property liable for taxation that has not been assessed or of property that has been fraudulently or improperly assessed through error or otherwise, to investigate the same, and if error, inequality, or fraud is found to exist, to take such proceedings and to make such orders as to correct the same." This same section provides that if the State Board finds the tax list or assessment roll of any county to be grossly irregular, or any property to be unlawfully or unequally assessed as between individuals, sections of the county, or counties, it shall correct such irregularities "and shall equalize and make uniform the valuation thereof upon complaint by the board of county commissioners under rules and regulations prescribed by it. . . . Provided, further, that taxpayers

and ownership interests may file separate and distinct appeals or joint appeals at the election of one or more of the taxpayers. . . ."

Prior to the enactment of Ch. 7 § 1, S. L. of 1969, the last proviso of G.S. 105-275(3) (like a similar provision in G.S. 105-329) permitted joint appeals by taxpayers only with the consent of the State Board.

The preceding resumé discloses an integrated and adequate procedure for the assessment of taxable property and for administrative review of questioned evaluations. It likewise manifests the legislature's intent that the agency designated to hear appeals in all matters pertaining to tax valuations should also be the one empowered to make the final valuation. The State Board — unlike the courts — has the staff, the specialized knowledge and expertise necessary to make informed decisions upon questions relating to the valuation and assessment of property. This case demonstrates the wisdom and practicality of the requirement that an aggrieved taxpayer or other party exhaust all available administrative remedies before resorting to the courts for relief.

In bringing this action plaintiffs relied upon *Stocks v. Thompson,* 1 N.C. App. 201, 161 S.E. 2d 149. The plaintiffs, in that case, sought a writ of mandamus to compel the county commissioners to include tobacco allotments as an element of value in the appraisal and assessment of Columbus County real estate for taxes. The judge overruled the defendants' motion to dismiss the action because of plaintiffs' failure to exhaust the administrative remedies provided in G.S. 105-327, G.S. 105-329, and G.S. 105-275(3). The Court of Appeals granted defendants' petition for certiorari to review the ruling. In that court the defendants demurred *ore tenus* to the complaint on the ground that plaintiffs had stated no cause of action for mandamus.

The Court of Appeals overruled the demurrer, holding that mandamus would issue to compel defendants to consider the value of tobacco allotments in assessing property but not to direct the manner or amount of the valuation. It affirmed the Superior Court's refusal to dismiss the action on the ground that the administrative remedies were so totally inadequate that individual citizens were not required to exhaust them before resorting to the courts. The rationale was: (1) In appeals from county boards of review to the State Board, G.S. 105-329 and G.S. 105-275(3) (as then written) required each taxpayer to file a separate appeal and prohibited joint appeals except with the consent of the State Board. (2) The statutes gave individual taxpayers seeking review of the valuation of a particular tract an adequate remedy but not citizens contesting the assessment

roll for an entire county. The second sentence in G.S. 105-275(3) directs the State Board of Assessment, *upon complaint by the board of county commissioners,* to correct any grossly irregular tax list or assessment roll and the valuation of any property unequally assessed as between individuals, counties or sections of counties. The Court of Appeals construed this sentence as limiting the right of appeal in such instances to the Board of County Commissioners. We do not agree.

[6] It is presumed that the legislature acted in accordance with reason and common sense and that it did not intend an unjust or absurd result; and, in construing a statute, the court always looks to its purpose. *State v. Humphries,* 210 N.C. 406, 186 S.E. 473; *Ikerd v. R. R.,* 209 N.C. 270, 183 S.E. 402; 82 C. J. S., *Statutes* §§ 316, 323, 325, 344 (1953). After giving the State Board "general and specific supervision" over valuations and taxation through the State, the legislature would hardly prevent it from correcting a grossly irregular assessment roll or an unlawful or unequal assessment as between individuals or sections of a county until it received a complaint from the Board of County Commissioners — ordinarily the very agency responsible for the alleged irregularities! In the few counties in which the board of commissioners does not sit as the board of equalization and review, and in proceedings brought to equalize values as between counties, the board of county commissioners might be expected to appeal to the State Board. In any other situation, however, the possibility of such an appeal seems remote. The records of the State Board of Assessment, going back to 1950, disclose no appeal by a board of county commissioners.

The decision in *Stocks v. Thompson* would nullify G.S. 105-327, which specifically allows *any property owner* dissatisfied with the valuation placed upon his property *or the property of others* to seek redress from the county board of equalization and review. The designation *property of others* is broad enough to include every piece of rural land or the county's entire tax list if the commissioners have failed to value it as required by law. Furthermore, the final proviso of G.S. 105-275(3) specifically refers to appeals by individual taxpayers. This section is not a model of legislative draftsmanship, but its first sentence clearly imposes upon the State Board the duty to hear and adjudicate *all* appeals from the county boards as to property which has been "improperly assessed through error or otherwise." This language encompasses appeals by individuals as well as boards. The second sentence, which authorizes appeals by boards of county commissioners, did not deprive the individual taxpayer of the right granted in the first.

The defendants in *Stocks v. Thompson* did not petition this Court for certiorari to review that decision. With all deference to the Court of Appeals and the learned author of the opinion, we think that case was wrongly decided.

**[7]** We hold that in G.S. 105-327, G.S. 105-329, and G.S. 105-275(3), the legislature has provided adequate means whereby the individual taxpayer may contest not only the valuation which the county commissioners have placed upon his own property but the entire tax list or assessment roll, and that he must exhaust this administrative remedy before he can resort to the courts.

**[1]** If defendant-commissioners have failed to value rural land in Nash County at its true value in money — be the failure deliberate, an error in judgment, or caused by a misconception of the law —, plaintiffs' initial step is to complain to the county board of equalization and review and request a' hearing. If they are dissatisfied with the action taken by that board they may except to its order and appeal to the State Board. *Power Co. v. Burke County,* 201 N.C. 318, 160 S.E. 173. Thereafter plaintiffs may resort to the courts, but only to obtain judicial review *for errors of law or abuse of discretion* by the State Board.

The decision is that the Superior Court had no authority to issue the writ of mandamus. The judgment from which defendants appeal is

Reversed.

MOORE, J., did not participate in the consideration or decision of this case.