IN THE MATTER OF THE AD VALOREM VALUATION OF PROPERTY LOCATED AT 411-417 WEST FOURTH STREET (F. W. WOOLWORTH COMPANY, LESSEE), IN FORSYTH COUNTY, NORTH CAROLINA, FOR THE YEAR BEGINNING JANUARY 1, 1968

No. 40

(Filed 11 October 1972)

1. Taxation § 25— standing to question valuation — lessee of retail store building

A retailer which leased a lot and store building and was required to list for taxation its stock of merchandise and equipment was a taxpayer which both owned and controlled taxable property assessed for taxation in the county, and the retailer thus had standing to appeal the valuation of the store building to the State Board of Assessment. G.S. 105-327(g) (2) ; G.S. 105-329.

2. Taxation § 25— standing to request hearing by Board of Equalization and Review

The right to request a hearing by and relief from the County Board of Equalization and Review is not limited to the owner in fee simple of the assessed property or to other taxpayers seeking a higher valuation upon that property.

3. Administrative Law § 4; Rules of Civil Procedure § 1— proceedings before State Board of Assessment — inapplicability of new Rules

The Rules of Civil Procedure do not apply to proceedings before the State Board of Assessment. G.S. 1A-1, Rule 1.

4. Taxation § 25— standing of lessee to question tax valuation

Where the lessee of real property was required by the terms of the lease to pay a portion of the taxes assessed on the property, the lessee was a real party in interest and could question the valuation placed on the property for tax purposes.

5. **Taxation § 25— tax value of store building — vacancy of second floor — vacancies in other buildings**

In determining the value of a store building for tax purposes, the State Board of Assessment could properly consider evidence that the second floor of the building is in such a condition that it could not be used or rented without substantial renovation and improvement and that the majority of second floor spaces in the neighborhood had been vacant for several years.

6. **Taxation § 25— tax value — location — attractiveness for commercial use — declining income**

In determining the valuation of property for tax purposes, the State Board of Assessment may consider disadvantages inherent in the location of the property, its declining attractiveness for commercial use, and any established declining trend in income. G.S. 105-295.

7. **Taxation § 25— tax value of downtown store building — competition from shopping centers**

In hearing an appeal concerning the valuation of a store building in a downtown area, the State Board of Assessment should consider the commonly known fact that in recent years retail stores in downtown metropolitan areas have suffered severely from the competition of shopping centers located in the outer edges of the city where ample parking facilities are available.

8. **Taxation § 25— revaluation — economic blight of downtown area**

The policy of equality in valuations, commanded by G.S. 105-294, compels tax assessors and, upon appeal, the State Board of Assessment, to take the economic blight of a downtown area into account when revaluing property for tax purposes.

9. **Taxation § 25— tax value — ability of property to produce income**

The ability of the property to produce income is one of the elements to be considered in determining its value for tax purposes.

10. **Taxation § 25— valuation — fair rental value — rent under existing lease**

As one of the factors to be considered in determining the valuation of property, the State Board of Assessment may substitute the fair rental value of the property on the valuation date for the actual rent payable under an existing long term lease which present conditions show to have been improvident from the point of view of the tenant, or the Board may consider both.

11. **Taxation § 25— conclusiveness of value fixed by State Board of Assessment**

The valuation fixed by the State Board of Assessment is conclusive when the Board's findings are supported by the evidence and, in turn, support its conclusion as to the value of the property.

12. **Taxation § 25— valuation of all buildings at replacement cost — income producing property**

Valuation of all buildings in the county at replacement cost was improper, although much of the property in the county is not

---

---

income producing, since G.S. 105-295 expressly directs that consideration be given to the income producing ability of the property where appropriate.

**13. Taxation § 25— factors in valuation of property for taxation**
    G.S. 105-295 contemplates that tax assessors, and the State Board of Assessment on appeal, will consider those attributes specified in the statute which apply to each specific piece of property in appraising its true value in money.

APPEAL by Forsyth County from *Gambill, J.*, at the 4 April 1972 "A" Session of FORSYTH, heard prior to determination by the Court of Appeals.

The judgment of the superior court affirmed the order of the State Board of Assessment directing the county taxing officials to reduce the tax valuation of the property in question for the year 1968 from $479,560 to $411,690, such reduction to be made in the value of the improvements upon the land.

The F. W. Woolworth Company, hereinafter called Woolworth, operates a store in a building owned by Fourth and Spruce Corporation at 411-417 Fourth Avenue, Winston-Salem, North Carolina. Woolworth occupies the building under a lease, the term of which began in 1955 and is to terminate in 1996. Under the lease Woolworth pays $42,500 per year in rent, after certain charge-offs provided for in the lease, and, in addition, is obligated to pay any excess of the ad valorem taxes assessed upon the lot and building over and above the taxes assessed in a designated base year.

Forsyth County revalued all real property in the county for tax purposes as of 1 January 1968. In that process it valued the property here in question at $479,560, of which $208,070 was the valuation of the land and $271,490 was the valuation of the building. Woolworth appealed to the County Board of Equalization and Review, contending that such valuation was excessive and should be reduced to a total of $125,000. The County Board of Equalization and Review having denied any relief, Woolworth appealed to the State Board of Assessment.

Before the State Board, Woolworth contended that the building, a two story structure completed in 1932, has experienced substantial physical depreciation and obsolescence, and that, in this location, there is a serious parking problem as compared to the condition at shopping centers in outlying areas

of the city. Woolworth asserted that, as a result, it had experienced a constantly decreasing volume of sales in this store, and that such valuation resulted in an assessment of this property at a higher percentage of its true market value than that used in the assessment of other similar properties throughout the county.

Prior to the hearing before the State Board, Forsyth County filed its motion to dismiss the appeal for the reason that Woolworth has no standing to appeal from the assessment of the property in question since it is not the owner of such property and, therefore, is not a taxpayer. The denial of this motion by the State Board is assigned as error upon the present appeal.

At the hearing before the State Board, Woolworth offered evidence consisting of an appraisal of the property prepared by Raymond J. Nicosia, a real estate appraiser, and the testimony of Mr. Nicosia in support and explanation thereof. Objections by the county to portions of the evidence introduced by Woolworth do not relate to the qualification of Mr. Nicosia to testify as an expert witness. The substance of his testimony and report is:

He visited the property, examined it and appraised it to determine its fair market value, which, in his opinion, is $270,000. He arrived at this conclusion by appraising the property at $290,000 on the basis of the value of the lot plus the cost of replacement of the building, less depreciation and obsolescence, at $270,000 on the basis of the income from rent which the property would normally attract and at $250,000 on the basis of sales of comparable property in the area. In his opinion, the income approach is the best indication of its fair value. He found that the first floor of the building was used by Woolworth for a retail store, the basement was partially used and the second floor was vacant. While Woolworth has the right under its lease to sublet the second floor, the condition of the building is such that substantial expenditures would be required to put it in a rentable or usable condition. The downtown area of Winston-Salem is presently in a declining stage. Commercial activity tends to relocate to the outer limits of the city. At the time of his appraisal, approximately one-third of the stores and the vast majority of second floor spaces were vacant and had been for several years. This store depends on

pedestrian traffic. Because of the changing conditions in the downtown area, this store's volume of sales has declined drastically over the last several years. The witness' valuation of the property is his capitalization of the estimated net income it is capable of producing on the basis of the fair rental income, which, in his opinion, is $28,512 per year. In determining the reasonable rental value of the property, he took into consideration the rent paid on other properties in the area, adjusted to make these comparable to the property in question. These rentals on other properties indicate a downward trend of rentals for retail stores in the area.

Evidence for the county consisted of a "Statement in the Defense of Value on Building" prepared by its appraiser, Lewis J. Kolter, and brief testimony by Mr. Kolter and by Fred C. Perry, Tax Supervisor for the County. The substance of this evidence is:

The paramount purpose of a revaluation for tax purposes is to attain equalization of values. In Forsyth County approximately 90,000 properties were appraised. Since only a small portion of these are income producing and only a relatively few are sold in a single year, the basis of appraisal was the cost of replacement with a substitute of like utility. Such "cost approach" takes into account physical and functional depreciation. In the opinion of the witness, the rent actually paid under the existing lease would have more bearing on the worth of the building than the increase or decrease in the volume of business done by the tenant. Capitalization of the net rental actually paid under the existing lease would result in a valuation in excess of the appraised value placed upon the property by the county pursuant to the reproduction cost appraisal made by this witness.

Upon this evidence, the State Board of Assessment made findings of fact, including the finding that the second floor of the building is in poor condition and would require substantial renovation to make it usable or rentable, and the finding "that the downtown area of Winston-Salem has experienced some economic decline in recent years—particularly in retail operations—and the sales volume of the appellant has shown a steady decline over the past several years."

Upon these findings, the State Board concluded that the County Board of Equalization and Review did not give proper

consideration to the condition of the property, especially as to the functional and economic factors affecting it, and that the valuation placed upon the property by the County Board is in excess of the fair market value, which the State Board concluded to be $411,690. The State Board thereupon ordered that the county taxing officials reduce the valuation to that figure.

The county appealed to the superior court, alleging as error: (1) The denial of its motion to dismiss for want of standing by Woolworth to appeal to the State Board of Assessment; (2) the insufficiency of Woolworth's statement of its grounds for appeal to the State Board in that the grounds stated constitute "general economic circumstances and factors which are inadmissible, incompetent and irrelevant"; (3) the admission by the State Board of evidence alleged by the county to be "speculative, irrelevant, immaterial, incompetent and otherwise unworthy of consideration"; and (4) that the order of the State Board is unsupported by competent, material or substantial evidence in view of the entire record.

The superior court entered judgment affirming the decision of the State Board of Assessment. From that judgment, the county now appeals assigning, in substance, the same errors assigned in its appeal to the superior court.

*P. Eugene Price, Jr., for plaintiff.*

*Hatch, Little, Bunn, Jones & Few, by James C. Little and Harold W. Berry, Jr., for defendant.*

LAKE, Justice.

Since this appeal relates to the valuation of the property for the tax year 1968, all citations herein to the General Statutes, both as to section number and as to content, refer to the statutes in effect prior to the revision of the Machinery Act by the General Assembly of 1971.

[1] There was no error in the denial by the State Board of Assessment of the county's motion to dismiss the appeal by Woolworth to that Board. G.S. 105-327 (g) (2) provided: "The board shall, on request, hear *any and all* taxpayers who own or *control* taxable property assessed for taxation in the county in respect to the valuation of *such property or the property of others.*" (Emphasis added.) G.S. 105-329 provided: "*Any* prop-

erty owner, *taxpayer* or member of the board of county commissioners may except to the order of the board of equalization and review and appeal therefrom to the State Board of Assessment * * * . " (Emphasis added.) G.S. 105-306(14) and (15) required the listing for taxation of merchandise held for the purpose of sale and of office furniture, fixtures and equipment. The record shows that Woolworth, by virtue of its lease, had control of the lot and building in question and that it operated therein a retail store. The State Board of Assessment could take judicial notice of the fact that Woolworth had in the store a stock of merchandise and equipment which it was required by law to list for taxation. G.S. 143-318. Thus, Woolworth was clearly a taxpayer who both owned and controlled taxable property assessed for taxation in the county.

[2] It is well established that the right to request a hearing by and relief from the County Board of Equalization and Review is not limited to the owner in fee simple of the property, the valuation of which is in question. *In re King,* 281 N.C. 533, 189 S.E. 2d 158; *King v. Baldwin,* 276 N.C. 316, 172 S.E. 2d 12. Nothing in these decisions lends support to the idea that this right is limited to such owner and other taxpayers seeking a higher valuation upon that property.

[3, 4] The Rules of Civil Procedure do not apply to proceedings before the State Board of Assessment. G.S. 1A-1, Rule 1. However, the record shows that Woolworth, by the terms of its lease, was obligated to pay at least a portion of the taxes assessed upon this lot and building. Thus, it was a real party in interest. This Court considered upon its merits an appeal by a lessee, required by its lease to pay taxes on the property, from a judgment of the superior court affirming an order of the State Board of Assessment, which, in turn, had affirmed the denial by the County Board of Equalization and Review of the lessee's petition for reduction in the valuation of the property, no question being raised therein as to the standing of the lessee so to proceed. *In re Pine Raleigh Corp.,* 258 N.C. 398, 128 S.E. 2d 855.

G.S. 105-294 required that all property, real and personal, be valued at its true value in money; that is, the amount of cash or receivables for which the property can be sold in such manner as such property is usually sold. There is no distinction between owners of real and personal property as to their right to insist

upon equality of valuation or as to their standing to pursue the remedies provided in the Machinery Act for error in the valuation of properties.

There is likewise no merit in the county's contention that the State Board of Assessment erred in receiving and in taking into consideration evidence that the second floor of the building was vacant and not in condition for rental or evidence that, due to the continuing economic deterioration of downtown Winston-Salem, Woolworth's volume of sales in this building had declined steadily over the past several years. Again, there is no merit in the county's contention that, if the income approach be used to determine the valuation of the property, the determination should be made on the basis of the rent actually payable under the existing lease rather than the fair rental value of the property under conditions existing upon the valuation date.

[5]   The mere fact that the lessee of the building elects not to use or to sublet a portion of it does not, of course, affect the valuation of the building for tax purposes. In this case, however, the evidence goes much further. It is to the effect that the second floor of this building is in such condition that it could not be used or rented without substantial renovation and improvement and that the majority of second floor spaces in the neighborhood had been vacant for several years. These are clearly material circumstances in the determination of the value of the building.

[6]   The statutory standard for valuation of property for tax purposes was the amount for which it can be sold in the manner that such property is usually sold. G.S. 105-294. In determining this, the assessors were directed by G.S. 105-295 to take into consideration "its advantages as to location * * * adaptability for * * * commercial or industrial uses, the past income therefrom, its probable future income * * * and any other factors which may affect its value." G.S. 105-295. The statutory direction to consider advantages inherent in the location of the property necessarily requires consideration of any disadvantages inherent in such location. Consideration of the adaptability of property to commercial uses necessarily requires consideration of its declining attractiveness for such use. Consideration of past income and probable future income clearly requires that attention be given to an established declining trend in income.

Furthermore, the statute expressly directs that consideration be given to "any other factors which may affect" the value of the property.

[7]  The State Board of Assessment, like other administrative agencies, is authorized, in the hearing of an appeal concerning valuation of property, to take notice of "judicially cognizable facts." G.S. 143-318. It is a matter of common knowledge that in recent years retail stores in downtown metropolitan areas have suffered severely from the competition of shopping centers located in the outer edges of the city where ample parking facilities are available. For the State Board of Assessment to ignore the effect of this circumstance upon the sale value of store buildings in the downtown area of a large city would be to shut its eyes to an established fact of common knowledge. The State Board of Assessment is neither required nor permitted to do this in discharging its duties under G.S. 105-329.

[8]  The economic blight of a downtown area in a city is not the result of a general, county-wide economic decline, affecting all properties in the county substantially alike. It is a disturbance of a preexisting relation between such downtown areas and other areas in the city or county. The policy of equality in valuations, commanded by G.S. 105-294, compels the assessors and, upon an appeal, the State Board of Assessment to take this economic development into account when revaluing property for tax purposes.

[9]  The ability of the property in question to produce income is clearly one of the elements to be considered in determining its value. *In re Pine Raleigh Corp., supra.* In the Pine Raleigh case, the petitioner contended that the valuation should be reduced because the petitioner had made an improvident long term sublease whereby it was receiving a substantially lower rental income than the property could otherwise have been rented for at the time of the valuation. This Court, speaking through Justice Rodman, said:

> "But the income referred to is not necessarily actual income. The language [G.S. 105-295] is sufficient to include the income which could be obtained by the proper and efficient use of the property. * * *
>
> "Net income produced is an element which may properly be considered in determining value, but it is only

one element. If it appears that the income actually received is less than the fair earning capacity of the property, the earning capacity should be substituted as a factor rather than the actual earnings. The fact-finding board can properly consider both."

[10]   The same reasoning permits the State Board of Assessment, upon an appeal such as the present, to substitute the fair rental value of the property, on the valuation date, for the actual rent payable under an existing long term lease, which present conditions show to have been improvident from the point of view of the tenant. It is to be observed that in this instance the State Board of Assessment did not reduce the tax valuation to a capitalization of the fair rentals to which Woolworth's expert witness testified, but valued the property at a figure between such value and that placed upon the property by the county. Thus, the State Board of Assessment having both before it, evidently considered both the actual rental income under the lease and the fair rental at the time of valuation. This Court approved a valuation based upon consideration of both in the Pine Raleigh case.

[11]   The findings by the State Board of Assessment in these respects are supported by the evidence and, in turn, support the conclusion as to its valuation of the property. That being true, the valuation fixed by the State Board of Assessment is conclusive. Neither the superior court nor this Court is authorized to make findings at variance with the findings of the State Board so supported. *In re Appeal of Broadcasting Corp.*, 273 N.C. 571, 160 S.E. 2d 728; *In re Pine Raleigh Corp., supra.*

[12, 13]   The county contends that its appraisers acted properly in selecting replacement cost as the more appropriate basis for valuation of buildings since much of the property in the entire county is not income producing. G.S. 105-295, however, expressly directs that consideration be given to the income producing ability of the property where appropriate. Obviously, this is an element which affects the sale of properties, the purpose of which is the production of income. To conform to the statutory policy of equality in valuation of all types of properties, the statute requires the assessors to value all properties, real and personal, at the amount for which they, respectively, can be sold in the customary manner in which they are sold. Not every attribute specified in G.S. 105-295 is applicable to every piece

of property in the county. The statute contemplates that the assessors, and the State Board of Assessment on appeal, will consider those which apply to each specific piece of property in appraising its "true value in money." See, *In re Appeal of Broadcasting Corp., supra,* at p. 578.

G.S. 143-318 requires the rules of evidence, as applied in the superior court and the district court divisions of the General Court of Justice, to be followed by the State Board of Assessment in the hearing of an appeal from a county board of equalization and review. *In re Trucking Co.,* 281 N.C. 375, 189 S.E. 2d 194. The record discloses no material error in the admission of evidence before the State Board. *In re Trucking Co., supra,* is distinguishable from the present case. Here, the protestant's appraiser, Mr. Nicosia, testified that he personally inspected the property to be appraised and testified as to his own opinion as to its value. His testimony as to the condition of the second floor of the building and as to the large number of vacant stores in the vicinity was based upon his own observations. His testimony that he was told that these vacancies had continued for a substantial period was hearsay, but this is not sufficient ground for the rejection of his appraisal. It is a matter of common knowledge that the general appearance of buildings in an area would indicate to such an appraiser whether existing vacancies had been of substantial duration. Furthermore, the record does not show any objection to his testimony as to what the people to whom he talked in the course of his appraisal told him about these vacancies.

We have carefully examined the record in connection with each contention of the county and find therein no error by the State Board of Assessment which would have permitted the superior court to reverse its order or remand the matter for further proceedings.

No error.