Brock v. Property Tax Comm.

DONALD P. BROCK; J. K. WARREN, JR.; W. B. HARGETT; H. C. BELL; MARY ELIZABETH BROCK McDANIEL; P. NELSON BANKS; HAROLD H. BATE; R. C. TYNDALL, JR.; G. B. FOY; C. C. JONES, JR.; W. W. BRAFFORD; ROBERT R. RIGGS; ERNEST B. RIGGS; HAROLD RIGGS; FRED D. RIGGS; RUSSELL J. RIGGS; DALTON EUBANKS; RALPH NOBLES; JERRY T. RIGGS; J. C. ARTHUR; E. N. RIGGS; W. H. RIGGS; ALTON ARTHUR; C. B. ARTHUR; BEN DILLAHUNT; THOMAS ARTHUR; C. FELIX HARVEY; JULIAN G. HOFMANN; CARLTON A. POLLOCK; MRS. ORA D. POLLOCK; SYLVANUS D. MALLARD; EDNA T. MALLARD; WILLIAM V. GRIFFIN; MRS. V. C. GRIFFIN; D. E. TAYLOR; HUGH B. OLIVER; W. DENFORD EUBANK; LINDY HARTSELL; CHRIS R. EUBANKS; HUBERT L. JENKINS; FELTON EUBANKS; CORENA ANDREWS; W. ARCHIE EUBANKS; MR. M. R. WILLIAMS; RALPH JONES; JOE MONETTE; RAY COLLINS; RAY HILL; MYRAL COLLINS; W. W. SIMPSON; RICHARD H. PARKER; RUDOLPH HUMPHREY; ERNEST W. HUMPHREY; JESSIE G. BYNUM; HAROLD MATTOCKS, JR.; WILLIAM F. MATTOCKS; J. J. CONWAY; R. E. PROVOST; CLINTON PHILLIPS; EUGENE SIMPSON; WAYNE SIMPSON; JOHNNY TOLER; JOHN H. TOLER; ROBERT H. TOLER; SAMUEL RIGGS; MELVIN E. HARRIS; MARY WOOTEN; EDWARD MEADOWS; CLEVE B. PROVOST, SR.; LELA S. EUBANK; HERBERT CONWAY; ELIJAH RIGGS; FURNEY COLLINS HEIRS; JAMES A. SIMPSON; JOE ED COLLINS; JOHN D. CARROWAY; MACK O. DANIELS; M. O. LaROQUE; NEIL RIGGS; AUGUSTA FRANKS; SPENCER HASKINS, JR.; MARTHA LOUISE AND GLENNIE HASKINS; PRESTON D. REYNOLDS; REX MILLS; WILLIAM E. KORNEGAY; C. V. MILLS; FRANK HOWARD; ALVA B. HOWARD; MARVIN BANKS; EARL F. GREENE; WILLIAM MILLS; NINA T. MILLS; HARVEY KING; J. E. TURNER, JR.; CONRAD JONES; LINWOOD F. COX; CARL KILLINGSWORTH; FRED HILL; ESSIE M. WHITE; B. B. STANLEY; HAZEL H. TURNAGE; PRESTON H. BANKS; LINWOOD B. SCOTT; NANNIE E. SCOTT; H. V. WILSON; RACHEL K. BANKS; ALPHEUS BANKS; BEN LANG; JOHN PARKS, AND HENRY FOSCUE, PETITIONERS v. NORTH CAROLINA PROPERTY TAX COMMISSION SITTING AS THE STATE BOARD OF EQUALIZATION AND REVIEW; N. D. McNAIRY, CHAIRMAN; WAYNE A. CORPENING, ROBERT C. BLACK, KYLE HARRINGTON AND MRS. E. B. HOWARD, MEMBERS OF THE NORTH CAROLINA PROPERTY TAX COMMISSION SITTING AS THE STATE BOARD OF EQUALIZATION AND REVIEW, RESPONDENTS

No. 38

(Filed 5 October 1976)

1. **Taxation § 25— valuation of property for tax purposes — schedule of values established — property individually appraised**

The valuation for tax purposes placed upon property within a county by the county commissioners is arrived at through a two-step

process: (1) initially a schedule of values for property within the county is established and adopted; (2) then, pursuant to this schedule, particular properties are appraised on an individual basis. G.S. 105-317. Any protest of the valuations must be directed to the specific component part with which it is concerned—whether it be the schedule of values or the appraisal.

**2. Taxation § 25— finding that schedule of values attacked — insufficiency of evidence to support**

Evidence was insufficient to support the finding of the Property Tax Commission that a hearing before a county board of equalization and review and petitioners' appeal to the Property Tax Commission were attacks on the schedule of values established by the county commissioners for property in the county and not attacks on the appraisal of the property belonging to petitioners where the only direct evidence before the property Tax Commission bearing on the question was a letter from the county board of equalization and review to one petitioner which denied his request "for a percentage reduction of all farm property" in the county, but the letter was ambiguous with reference to the nature of the requested reduction; moreover, petitioners' notice of appeal to the Property Tax Commission which listed reasons for the appeal made it clear that petitioners were appealing the appraised value placed on their property and not the schedule of values.

**3. Appeal and Error § 7; Taxation § 25— appeal from order of county board of equalization and review — standing to appeal**

Ninety-nine petitioners who tried to join the appeal of twelve petitioners from a decision of the county board of equalization and review prior to a determination by the N. C. Property Tax Commission had no standing to pursue the appeal; the ninety-nine late petitioners should first request a hearing before the county board of equalization and review and then appeal to the Property Tax Commission within thirty days after the county board mails notice of its decision.

PETITIONERS appeal from decision of the Court of Appeals, 29 N.C. App. 324 (1976), upholding judgment of *Hall, J.,* 28 July 1975 Civil Session, WAKE Superior Court.

G.S. 105-286 required Jones County to make an octennial revaluation of real property within the County as of 1 January 1974. Southern Appraisal Company, a private appraisal firm, was employed by the County to assist with the reappraisal. The firm developed uniform schedules of values to be used in appraising the various kinds of property in Jones County and presented them to the Board of Commissioners for approval. The schedules were approved and adopted by the Board on 4 September 1973, and a notice of their adoption was published in the *Kinston Daily Free Press* and the New Bern *Sun-Journal*

on 10 September 1973 and in the Jacksonville *Daily News* on 12 September 1973. The published notice read as follows:

> "On Tuesday, the 4th day of September, the commissioners of the County of Jones approved and adopted schedules, standards and rules to be used in the next scheduled re-appraisal of real property. These schedules are open for examination by any property owner of the County at the office of the Tax Supervisor for a period of ten (10) days from the date of publication of this notice as required by Law (G.S. 105-317(C)).
>
> This 7th day of September 1973.
>
> > Julian D. Waller
> > Jones County Tax Supervisor"

Apparently no objections to the valuation schedules were received by the Jones County Tax Supervisor during the period they were open for inspection. Thereafter, Jones County proceeded with its revaluation so as to accomplish the task by 1 January 1974.

On 6 May 1974 Donald P. Brock and other unidentified property owners appeared before the Jones County Board of Equalization and Review protesting the values placed on their lands for tax purposes and requested "a percentage reduction of all farm property in Jones County" of at least 25 percent, contending that all farm property in Jones County had been valued in excess of its true market value by at least that amount. Following an informal hearing which was not recorded, this request was denied. On 3 June 1974 petitioners served notice of appeal to the North Carolina Property Tax Commission and on 29 July 1974 made application for a hearing.

On 14 August 1974 Jones County filed with the Property Tax Commission (1) motion to strike certain portions of petitioners' notice of appeal, (2) motion to dismiss appeal and (3) answer to the application for hearing and notice of appeal. On 22 August 1974 Jones County filed a motion to dismiss the appeal of the additional persons whose names were forwarded to the Property Tax Commission by Mr. Brock on 6 August 1974 to be listed as appellants.

A hearing was duly scheduled for 10:30 a.m. on 25 October 1974 in Room 671 of the Revenue Building in Raleigh, and all

interested parties were notified by the Property Tax Commission that "this hearing will be limited to arguments regarding the Motions filed by the County in the case. Each side is being allotted 45 minutes to make its presentation."

Following a plenary hearing on the various motions, the Property Tax Commission concluded that (1) "with the exception of # 2," the County's motion to strike designated portions of petitioners' "notice of appeal and application for hearing" should be allowed, (2) the County's motion to dismiss the appeal of the "additional" appellants should be allowed for that the persons named in that list "have no standing to appeal to the Property Tax Commission since they did not even appeal to the County Board of Equalization and Review," and (3) the County's motion to dismiss the appeal of *all* the appellants should be allowed. Accordingly, it was ordered, adjudged and decreed that "with the exception noted, the County's Motions are allowed and the appeals of all the appellants are dismissed." This final decision of the Property Tax Commission is dated 4 December 1974.

On 3 January 1975 appellants filed exceptions to the final decision of the Property Tax Commission and petitioned the superior court for judicial review. Judicial review was had before Judge Hall at the 28 July 1975 Civil Session, Wake Superior Court, and on 30 July 1975 he rendered judgment affirming the administrative decision of the Property Tax Commission. Petitioners appealed to the Court of Appeals. That court affirmed with Vaughn, J., dissenting. Thereupon petitioners appealed to the Supreme Court as of right, G.S. 7A-30(2).

*Brock & Foy by Louis F. Foy, Jr., attorneys for petitioner appellants.*

*Rufus L. Edmisten, Attorney General, by Myron C. Banks, Special Deputy Attorney General, for the Property Tax Commission, respondent appellee.*

*James R. Hood, attorney for Jones County Board of Commissioners and Jones County Board of Equalization and Review, respondent appellees.*

HUSKINS, Justice.

Appellants contend the Property Tax Commission erred in dismissing their appeal from the Jones County Board of Equali-

zation and Review. This constitutes petitioners' first assignment of error.

[1]  In view of sweeping changes implemented by the 1971 Machinery Act, it is essential to first examine the procedures developed by the Legislature to allow a taxpayer to contest the valuation placed upon his property by the county commissioners. This valuation is arrived at through a two-step process. Initially a schedule of values for property within the county is established and adopted. G.S. 105-317. Then, pursuant to this schedule, particular properties are appraised on an individual basis. G.S. 105-317.

Under separate procedures established by the Legislature, any protest of the valuations must be directed to the specific component part with which it is concerned—whether it be the schedule of values or the appraisal. The 1971 revision of the Machinery Act deliberately separated the two procedures to insure that appeals from the schedule of values would be taken *prior* to the use of those schedules in making appraisals of land. H. Lewis, The Annotated Machinery Act of 1971 (1971).

*Appeal of Schedule of Values:* After the schedule of values, standards and rules required by G.S. 105-317(b) have been approved and adopted by the board of county commissioners and notice thereof published as required by G.S. 105-317(c), any property owner of the county asserting that the adopted schedules, standards and rules fail to meet the appraisal standards established by G.S. 105-283 may except to the adoption order and appeal *directly* to the Property Tax Commission at any time within 30 days after the date of publication of the adoption order. Such appeal is perfected by filing a written notice thereof with the clerk of the board of county commissioners and with the Property Tax Commission, accompanied by the written statement of the grounds of appeal. G.S. 105-317(c)(1). The appeal procedure thus provided is the exclusive administrative means for challenging the order adopting schedules, standards and rules for the octennial reappraisal of real property for taxation. G.S. 105-317(c)(2).

*Appeal of Appraisal:* G.S. 105-322 establishes a county board of equalization and review and prescribes its powers and duties. Under that statute the board, upon request made prior to the board's adjournment, must hear any taxpayer who owns or controls taxable property in the county "with respect to the

listing or appraisal of his property or the property of others."
G.S. 105-322 (g) (2). At such hearing the county board of equal-
ization and review "shall hear any evidence offered by the
appellant, the tax supervisor, and other county officials that
is pertinent to the decision of the appeal." G.S. 105-322 (g) (2) c.
On the basis of its decision after such hearing has been con-
ducted, the board "shall adopt and have entered in its minutes
an order reducing, increasing, or confirming the appraisal . . . "
and shall notify the taxpayer by mail as to the action taken
not later than 30 days after the board's adjournment. G.S.
105-322 (g) (2) d.

Decisions of county boards of equalization and review and
boards of county commissioners with respect to the listing and
valuation of property for taxation are appealable to the Prop-
erty Tax Commission. G.S. 105-324 governs such appeals. Any
property owner in the county or member of the board of county
commissioners or board of equalization and review may except
to any order entered under the provisions of G.S. 105-322 (and
other statutes not pertinent here) and appeal to the Property
Tax Commission. G.S. 105-324 (b). To perfect such an appeal
the appellants, within 30 days after the board of equalization
and review has mailed the notice of its decision, must file a
written notice of appeal and a written statement of the grounds
of appeal with the clerk of the board of county commissioners
and with the Property Tax Commission. G.S. 105-324 (b). If
such appeal is timely perfected that Commission must proceed
under the provisions of G.S. 105-290 (b). G.S. 105-324 (b).

When an appeal under this statute has been timely filed
and the hearing is before the full Commission, the Property
Tax Commission is required to fix a time and place at which
the Commission shall hear the appeal after giving 10 days writ-
ten notice to the appellants and to the clerk of the board of
commissioners of the county from which the appeal is taken.
"At the hearing the Commission shall hear all evidence and
affidavits offered by the appellant and appellee county . . . "
and make findings of fact and conclusions of law. G.S. 105-
290 (b) (2) b.

Any person aggrieved by a final decision of the Property
Tax Commission, and who has exhausted all administrative
remedies available to him, is entitled to judicial review. G.S.
143-307 (now G.S. 150A-43 et seq.).

We now turn to the task of applying these legal rules and procedures to the facts contained in the record before us.

[2]   The Property Tax Commission dismissed the appeal in a final order containing both findings of fact and conclusions of law. The Commission found that both the hearing before the county board and the appeal to the Commission were attacks on the schedule of values and not on the appraisal of the property belonging to petitioners. Based on this finding the Commission concluded that appellants did not avail themselves of the proper procedure to attack the schedule of values and thus were without standing to pursue the appeal. This conclusion must necessarily stand or fall on the correctness of the Commission's finding as to the nature of the appeal. For the reasons which follow we hold this finding to be erroneous.

*As to the hearing before the county board of equalization and review:* The administrative decisions of the Property Tax Commission, whether with respect to the schedule of values or the appraisal of property, are always subject to judicial review after administrative procedures have been exhausted. *See In re Appeal of Broadcasting Corp.,* 273 N.C. 571, 160 S.E. 2d 728 (1968) ; *In re Freight Carriers, Inc.,* 263 N.C. 345, 139 S.E. 2d 633 (1965). When judicial review is sought in superior court on the record made before the Property Tax Commission, as here, the court is bound by the findings if they are supported by competent, material and substantial evidence in view of the entire record as submitted. G.S. 143-315(5) (now G.S. 150A-51(5)). Where the findings are not thus supported the case will be remanded for further proceedings. *See In re Appeal of Broadcasting Corp., supra; In re Pine Raleigh Corp.,* 258 N.C. 398, 128 S.E. 2d 855 (1963). A county board of equalization and review operates in a very informal manner. No record is kept and usually little hard evidence exists to indicate the procedures followed. Therefore, appeals to the Property Tax Commission should not be dimissed on technical grounds but only for clear noncompliance with statutory prerequisites.

The only direct evidence before the Property Tax Commission bearing on the question whether appellants in this case were attacking the *schedule of values* or the *appraisal* is the letter from the Jones County Board of Equalization and Review to Donald P. Brock dated 9 May 1974 informing Mr. Brock that the Board had denied his request "for a percentage reduction of all farm property in Jones County appraised in the recent

revaluation." This letter is ambiguous with reference to the nature of the requested reduction, and no record of the hearing before the county board exists to resolve this ambiguity. Other evidence before the Commission is similarly ambiguous on this point. We find no competent, material and substantial evidence in view of the entire record as submitted to support the finding of the Property Tax Commission that the original hearing before the Jones County Board of Equalization and Review was an attack on the schedule of values and nothing more.

*As to the appeal before the Property Tax Commission:* The notice of appeal by the original eleven petitioners, dated 31 May 1974 and served 3 June 1974, lists, *inter alia,* as reasons for appealing: "That said farm land and woodland has been valued in excess of its true value . . . That in placing said high and excessive values on said lands the appraisal firm either did not take into consideration or did not have information available to them as to the income producing potential, either past, present or future of said farm or woodland and did not visit and check all the lands valued as required by the Statute . . . That in valuing timber lands, if only timber-producing qualities of lands can be used as set out by the North Carolina Statutes, said lands are valued at two and three times its true value . . . That these appellants did not receive a full and adequate hearing before the County Board of Equalization and Review . . . That these appellants request a full and complete hearing before the State Board of Assessments [Property Tax Commission] with the evidence presented, documented and recorded, . . . and that these appellants will be in a position to furnish expert witnesses as to the productivity of the farm land and timber lands in Jones County and to show that the valuations placed by the appraisal firm were far in excess of their true and practical values." In our view the quoted portions of the notice of appeal constitute an appeal on the *appraised value* placed on the property of those eleven taxpayers.

We note that appellants did not offer proof of these allegations at the hearing before the Commission. That hearing, however, was "limited to arguments regarding the Motions [to strike and to dismiss] filed by the County in the case." At such a limited hearing appellants are not required to prove an attack on the appraisal of land; that kind of proof is required at the full hearing *de novo* on the merits as provided in G.S. 105-290(b). At a hearing on the motion to dismiss it is sufficient

to establish an attack on the appraisal of land where allegations are made which, if proven, entitle the taxpayers to relief. As seen from the quoted portions of the notice of appeal, appellants carried this burden.

For the reasons set out we hold that appellants sought to contest the appraisal of land before both the county board and the Property Tax Commission. It appears from the record as submitted, and the appeal's procedure as established by the statutes, that appellants followed the correct procedure in perfecting their appeal on the appraisal. We hold therefore that they are entitled to a full hearing *de novo* before the Property Tax Commission on the merits.

[3] Among the petitioners listed in the caption, only the first eleven, to wit: Donald P. Brock; J. K. Warren, Jr.; W. B. Hargett; H. C. Bell; Mary Elizabeth Brock McDaniel; P. Nelson Banks; Harold H. Bate; R. C. Tyndall, Jr.; G. B. Foy; C. C. Jones, Jr., and W. W. Brafford, have standing to pursue this appeal. The ninety-nine landowners listed in the attachment to Mr. Brock's letter dated 6 August 1974 are not entitled to join the appeal en route, and the appeal was properly dismissed as to them. G.S. 105-324 provides that *any* property owner may except to an order of the county board of equalization and review and appeal to the Property Tax Commission. This statutory provision presupposes a ruling by the county board adverse to a taxpayer with respect to the listing or appraisal of his property or the property of others, *after a hearing requested by the taxpayer.* To perfect an appeal from the county board, an appellant must file a written notice of appeal with the clerk of the board of county commissioners and with the Property Tax Commission within 30 days after the county board has mailed notice of its decision pursuant to G.S. 105-322 (g) (2) d. Here, the county board mailed its notice on 9 May 1974. Donald P. Brock and ten other landowners gave written notice of appeal dated 31 May 1974 and served 3 June 1974. The other ninety-nine landowners entered the picture on 6 August 1974, well beyond the statutory deadline, when Mr. Brock forwarded their names to the Property Tax Commission with a letter stating that they wished "to join the appeal taken by myself and others in connection with the property reevaluation in Jones County, North Carolina." The law does not permit them to board the train after it has left the station.

G.S. 105-322(g)(2) provides that the county board must, on request, "hear any taxpayer who owns or controls property taxable in the county with respect to the listing or appraisal of his property *or the property of others.*" (Emphasis added.) Under this statute, appellants contend that, even should the ninety-nine additional appellants lack standing, the original eleven plaintiffs can and did raise an issue as to the appraisal of all property in Jones County, including that of the ninety-nine.

Appellants rely on several opinions of this Court for that proposition. *See In re Valuation,* 282 N.C. 71, 191 S.E. 2d 692 (1972); *In re King,* 281 N.C. 533, 189 S.E. 2d 158 (1972); *King v. Baldwin,* 276 N.C. 316, 172 S.E. 2d 12 (1970). In so relying, appellants misconstrue the thrust of those cases. When examined with respect to the statutes in effect at the time these cases were decided and with respect to the facts of each case, it is clear that the Court permits a property owner to contest the valuation on the "property of others" only where he is in some way aggrieved by that valuation.

On the record in this case, there has been no showing that the original eleven appellants have been aggrieved by the appraisal of the property of the ninety-nine taxpayers listed in the letter of 6 August 1974. Therefore as to that property this appeal is properly dismissed.

Other questions posed in appellants' brief need not be discussed. It suffices to say that the notice of the adoption of the schedules was published in newspapers having general circulation in Jones County, and the publication complied in all respects with G.S. 105-317(c). Questions raised regarding the adequacy of the notice are now moot since petitioners are not attacking the schedules.

Whether the order of the Property Tax Commission striking portions of the notice of appeal is correct or erroneous has no legal significance in relation to this appeal and need not be discussed.

For the reasons stated the decision of the Court of Appeals is reversed. This case is remanded to that court for entry of an appropriate order remanding the case to the Superior Court of Wake County with instructions for further remand to the Property Tax Commission. That Commission, in its capacity as

the State Board of Equalization and Review, shall hear and adjudicate on its merits the appeal of the eleven original petitioners as provided by G.S. 105-290(b).

Reversed and remanded.