IN THE MATTER OF: THE APPEAL OF CAMEL CITY LAUNDRY COMPANY FROM THE APPRAISAL OF CERTAIN REAL PROPERTY BY THE FORSYTH COUNTY BOARD OF EQUALIZATION AND REVIEW FOR 1990

No. 9310PTC965

(Filed 5 July 1994)

1. **Taxation § 100 (NCI4th)— Property Tax Commission's identification of witness—no indication of weight attached to testimony**

   There was no merit to appellant's contention that the manner in which the Property Tax Commission identified its expert witness in the record indicated the weight the Commission attached to his opinion, since the witness was qualified, admitted, and testified as an expert witness, and there was no reason to believe that the Commission understood him to be otherwise.

   **Am Jur 2d, State and Local Taxation §§ 704 et seq.**

2. **Taxation § 82 (NCI4th)— valuation of property—nonstatutory factors considered—error**

   The Property Tax Commission overstepped its statutory authority in determining a property's value where it considered

IN RE APPEAL OF CAMEL CITY LAUNDRY CO.

[115 N.C. App. 469 (1994)]

the ability of the subject property to produce income in its cont-aminated state and the cost to cure the contamination; the Com-mission did not link these factors to the price a buyer would pay for the property; and none of appellee's witnesses provided the Commission with a statement of the fair market value of the property.

**Am Jur 2d, State and Local Taxation §§ 704 et seq.**

Appeal by Forsyth County and its tax assessor from final deci-sion entered 23 April 1993 by the North Carolina Property Tax Com-mission. Heard in the Court of Appeals 12 May 1994.

*Stern, Graham & Klepfer, by James W. Miles, Jr. for petitioner-appellee.*

*Office of Forsyth County Attorney, by Bruce E. Colvin, for respondent-appellant.*

WYNN, Judge.

For several decades, Taxpayer, Camel City Laundry Company ("Camel City") owned and operated a commercial dry-cleaning busi-ness at 501 East Third Street, Winston-Salem, Forsyth County, North Carolina. The property is also known in Forsyth County as Tax Block 40, Lot 301. The property is 53,600 square feet (1.23 acres) and contains one 25,486-square foot building surrounded by a paved, 56-space asphalt parking lot.

From 1900 until purchased by Camel City, the property was suc-cessively owned by Winston-Salem Gas & Lighting Company, Duke Power Company, and Piedmont Natural Gas Company, and was used as an industrial site. Between 1910 and 1920, the facility was used to produce gas by coal and water gasification. The owners all used and stored various chemicals on the property for the operation of the gasification plant, for a creosote pit to coat power line poles, and for on-site waste disposal. Over the years, fuel storage tanks and an underground mineral spirits tank were used on the property. Coal was also stored on the property.

Camel City has owned the property since the late 1950's or early 1960's. It was a dry-cleaning and laundry processing plant until 1989, when the building was converted into office space and a laundry and customer service facility.

**IN RE APPEAL OF CAMEL CITY LAUNDRY CO.**

[115 N.C. App. 469 (1994)]

In 1988, pursuant to N.C. Gen. Stat. § 105-286, appellant Forsyth County ("County") reappraised all real property within Forsyth County in accordance with N.C. Gen. Stat. §§ 105-283 and 105-317. Camel City's property was appraised at $639,000, effective 1 January 1988.

In 1989, Camel City received an offer to purchase the property for $750,000, contingent on a satisfactory environmental assessment. An environmental assessment concluded that both subsurface soils and the shallow groundwater table appeared to be contaminated by pollutants. Upon learning of the contamination, the offer to purchase was withdrawn.

While the subsurface of the property is contaminated, there is no evidence in the record that the interior of the building or the parking lot have been negatively affected.

On 29 May 1990, Camel City appealed the $639,000 valuation to the Forsyth County Board of Equalization and Review. The Board unanimously affirmed the $639,000 valuation. Camel City appealed this decision to the Property Tax Commission. On 23 April 1993, the Commission granted Camel City's petition for a reduction in the assessment of the property and entered its Final Decision, setting the value of the property at $125,000. The County appeals from that decision.

I.

[1] During the course of the Commission's 12 November 1992 hearing, the County tendered its only witness, John Potter, the lead commercial tax appraiser in Forsyth County. After establishing Potter's credentials in the field of real estate appraisal, the County's counsel stated, "At this time I tender Mr. Potter as an expert witness in real estate appraisal." Camel City's counsel said, "No objection," and the Commission's Acting Chairman stated, "Let him be admitted."

The County contends that the Commission failed to consider Mr. Potter's testimony to be that of an expert witness. The County's only basis for this contention is that the Commission's Final Decision listed "oral testimony of Mr. John G. Potter" among the evidence presented by the County, while for Camel City's evidence it listed "oral testimony of Mr. John McCracken. Admitted to testify as an expert witness in the field of real estate appraisal." The County contends that because the Commission did not identify Mr. Potter as an expert when listing the County's evidence, it did not give Mr. Potter's testimony the weight normally given to that of an expert witness.

We do not accept the notion that the manner in which the Commission identifies a witness in the record indicates the weight the Commission attached to his opinion. Mr. Potter was qualified, admitted, and testified as an expert witness. There is no reason to believe that the Commission understood him to be otherwise. We find no reversible error in the Commission's consideration of Mr. Potter's testimony.

## II.

[2] The County next argues that the Commission overstepped its statutory authority in determining the property's value because it considered factors that are not authorized by statute. The Commission's Finding of Fact No. 19 reads, "After carefully considering both the ability of the subject property to produce income in its contaminated state and the cost to cure the contamination, the Commission finds that the true value in money of the subject property as of 1 January 1990 was $125,000."

The Machinery Act, which controls the listing, appraisal, and assessment of property, sets forth uniform standards for property appraisal and assessment throughout the State. The statute provides:

All property, real and personal, shall as far as practicable be appraised or valued at its true value in money. When used in this Subchapter, the words "true value" shall be interpreted as meaning market value, that is, the price estimated in terms of money at which the property would change hands between a willing and financially able buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of all the uses to which the property is adapted and for which it is capable of being used.

N.C. Gen. Stat. § 105-283 (1992). The North Carolina General Assembly, and no one else, determines how property in this State should be valued for the purposes of ad valorem taxation. *In re Appeal of Amp*, Inc., 287 N.C. 547, 215 S.E.2d 752 (1975). The Machinery Act does not provide for consideration of property's income-producing ability nor for the cost to conduct environmental remediation on the property in determining property value. This is not to say that these factors do not play a part in the value of the property. No doubt a buyer would take them into account when deciding upon a price to offer for the property. However, the Commission relied on these factors without linking them to the price a buyer would pay for the property, which is

the statutorily-required measure of true value. Not one of Camel City's three witnesses provided the Commission with a statement of the fair market value of the property. Thus, even assuming the existence of a buyer who had considered the property's income-producing ability and the cost of remediation, we have no way of knowing whether this buyer would purchase the property for $125,000. The Commission did hear some evidence about the difficulty of selling the property, and found that "uncertainties concerning the costs of cleaning up the site (if it can be completely remediated) and who might ultimately have to pay these costs would make the subject property extremely difficult to sell." However, it appears from the record that the Commission did not base its decision on this finding.

A Property Tax Commission decision is reversible where its "findings, inferences, conclusions or decisions are . . . in excess of statutory authority or jurisdiction of the Commission" or "unsupported by competent, material and substantial evidence in view of the entire record as submitted" such that they prejudice the appellant's substantial rights. N.C. Gen. Stat. § 105-345.2 (1992). Absent evidence that the Commission's decision was based on statutorily-mandated criteria, we find that the Commission exceeded its statutory authority and that its decision is unsupported by competent evidence, resulting in prejudice to the County's substantial rights.

We reverse the Commission's decision and remand so that the Commission may consider appropriate evidence of the property's true value as defined by N.C. Gen. Stat. § 105-283.

III.

The County also assigns error to the Commission's consideration of materials which were not submitted ten days before the hearing, as required by the Commission's rules. Because we remand for rehearing on other grounds, we need not address this assignment of error.

Reversed and remanded.

Judges LEWIS and MARTIN concur.