MAO/PINES ASSOCIATION, LTD. D/B/A THE PINES OF WILMINGTON, APPELLANT v. NEW HANOVER COUNTY BOARD OF EQUALIZATION, APPELLEE

No. 9310PTC209

(Filed 18 October 1994)

**Taxation § 99 (NCI4th)— asbestos contamination—no consideration in determining value for ad valorem taxes—information to County not timely**

The Property Tax Commission did not err as a matter of law by not considering evidence of a factor allegedly affecting the "true value" of taxpayer's property for a given year (asbestos contamination) but which factor taxpayer failed to make known to the County. Plaintiff's statement regarding asbestos contamination to the County's appraiser nearly sixteen months after the effective date of appraisal and almost four months following conclusion of the tax year in question, as well as the proffer of

asbestos contamination evidence at the hearing before the Property Tax Commission, came too late to qualify as proper and timely notification.

**Am Jur 2d, State and Local Taxation §§ 802 et seq.**

**What constitutes laches barring right to relief in taxpayers' action. 71 ALR2d 529.**

Appeal by taxpayer from decision entered 19 November 1992 by Vice Chairman George C. Cunningham of the North Carolina Property Tax Commission. Heard in the Court of Appeals 1 December 1993.

*Parker, Poe, Adams & Bernstein, by Charles C. Meeker and Henry C. Campen, Jr., for appellant.*

*New Hanover County Attorney's Office, by Kemp Burpeau, for appellee.*

JOHN, Judge.

Taxpayer MAO/Pines Associates, Ltd., d/b/a The Pines of Wilmington (Pines), challenges the Final Decision of the Property Tax Commission (Commission) entered 19 November 1992 in favor of New Hanover County. Pines owns a 233-unit apartment complex (the property) located upon thirteen acres in Wilmington, N.C. The complex was built in 1974 and purchased by Pines in 1985.

The record reflects New Hanover County appraised the property pursuant to N.C. Gen. Stat. § 105-286 (1992) at a value of $4,936,424.00, effective 1 January 1991. Pines appealed this appraisal to the New Hanover County Board of Equalization and Review for 1991 (Board). During Pines' appearance before the Board on 18 June 1991, no reference was made to asbestos contamination. However, Gary Bruce Lipton (Lipton), Vice President of the company which owns and manages Pines, later testified at the Commission hearing that he had become aware of the presence of asbestos "in May, June of 1991." On 20 June 1991, the Board concluded the value of the property coincided with the amount of the County's appraisal. Pines thereafter timely requested a hearing before the Commission, contending the assessed value of the property should be reduced to $3,500,000.00. In introducing the case at the 16 July 1992 hearing, the Commission Secretary summarized Pines' grounds for seeking a reduced appraisal (apparently contained in its Application for Hearing) as being "due to excessive expenses and low rents."

MAO/PINES ASSOC. v. NEW HANOVER COUNTY BD. OF EQUALIZATION

[116 N.C. App. 551 (1994)]

In September 1991, Testwell Craig Environmental Consultants (Testwell) conducted an "environmental assessment of asbestos" on the property at the behest of Pines, and on 5 December 1991 Testwell performed air sampling for asbestos. On each occasion it furnished a report to Pines detailing its findings. The first investigation revealed the presence of asbestos-containing building materials, particularly in the roofs and ceilings of all tested units, and in the linoleum flooring of one. The later air sampling indicated asbestos concentrations within the units at "below the clearance level of 0.010 fibers/cc," which is "below the clearance criteria for most regulations." Nothing in the record suggests either report was provided to the County until the 16 July 1992 hearing.

James S. Bethune (Bethune), Appraiser Supervisor in the New Hanover County Assessors Office, testified at the hearing that he personally reviewed the County's appraisal upon Pines' appeal to the Board and visited the premises in April 1991. However, it was not until almost exactly one year later that he received his "first notice" of asbestos contamination while meeting Lipton and others at the property on 16 April 1992. The record reflects no other indication of the presence of asbestos being given to the County or any of its employees. Bethune reached an appraised value of $4,945,274.00 as of 1 January 1991 using "a capitalized value by income approach." He stated he had been furnished information indicating occupancy "slightly under 98%" as of that date, and that 95% is the figure normally used for appraisal purposes. In Bethune's opinion, the presence of asbestos at the property had no effect either upon occupancy or rental rates as of 1 January 1991. Lipton's testimony at the 16 July 1992 hearing confirmed his belief that as of that date, notification of tenants about asbestos contamination "ha[d] not been done."

Bethune addressed the 16 April 1992 asbestos information in his subsequent appraisal and concluded there was no requirement "to remove [asbestos materials], and they would or will not be removed until the buildings are torn down, which would not be within the economic lifetime of the buildings." Further, he knew of "[no] sales conditions requiring the removal of asbestos material . . . unless the intent of the buyer was to demolish the improvements, or the improvements required extensive renovations."

Bethune further pointed out in his report that "[t]he owners admitted at [the 16 April 1992 meeting] that they were using the estimate [in excess of four million dollars] for removing and replacing

the hazardous material as a reason to persuade RTC, receivers for the failed mortgage holder, to write the mortgage down to about one half the current value." Lipton testified before the Commission that Pines had stopped paying the mortgage as of 1 April 1991, and had been attempting to renegotiate it with RTC.

Robert C. Cantwell (Cantwell), a certified real estate appraiser, inspected the property on 22 June 1992 on behalf of Pines. He testified the "owner" made him aware of asbestos contamination prior to his appraisal. Taking into consideration the presence of asbestos and using "the capitalization of income approach," Cantwell appraised the value of the complex in the amount of $2,600,000.00 as of 1 January 1991.

On 2 July 1992, Pines moved to amend its Application for Hearing before the Commission on grounds that when that document was originally filed (18 July 1991), Pines "did not have an appraisal as to the true value" of the property on 1 January 1991. In its motion, Pines requested modification of the Application to "reflect the property owner's appraisal [by Cantwell] of $2,530,000.00." Although Cantwell's appraisal itself took into account the apparent presence of asbestos on 1 January 1991, Pines did not specifically refer to asbestos in its Motion to Amend. Immediately prior to commencement of the hearing, Vice-Chairman Cunningham indicated the motion was allowed "to reflect the amount as stated in the motion of $2,530,000.00."

Following a full evidentiary hearing on 16 July 1992, the Commission subsequently upheld the County's assessment in a written Final Decision on 19 November 1992. Regarding asbestos contamination within the premises, the Commission found as a fact that:

8. While it appears that the subject property is, and was as of 1 January 1991, affected by the presence of asbestos-containing materials, this problem was not know [sic] to either the owner or the County as of 1 January 1991.

It then entered Conclusions of Law, including the following:

3. While the County's [sic] did not consider the possible impact on value of the presence of asbestos-containing materials in the course of its appraisal of the subject property, this was not error. The Commission concludes as a matter of law that because the presence of asbestos containing materials was not known to the Taxpayer and was therefore not made known to the County prior

to the appraisal date of 1 January 1991, the County was under no obligation to consider it. Neither the County nor this Commission is required to consider a factor which was not known to the owner at the time of the appraisal. The true value in money of the property as of 1 January 1991 could not have been affected by a condition which was unknown. The County is not required to exercise twenty-twenty hindsight.

On 17 December 1992, Pines filed a Motion for Reconsideration with the Commission, which motion was denied 22 January 1993. Pines timely appealed to this Court.

Pines brings forward two assignments of error: (1) the Commission erred in refusing to consider evidence of asbestos within the apartment complex on the appraisal date of 1 January 1991, and (2) the Commission erred in finding the sale and income approaches support the appraisal because the other apartment complexes analyzed were not contaminated with asbestos.

---

The standard to be employed by a county upon valuation is that all property "shall as far as practicable be appraised or valued at its true value in money." N.C. Gen. Stat. § 105-283 (1992). "True value" is defined in G.S. § 105-283 as meaning:

> market value, that is, the price estimated in terms of money at which the property would change hands between a willing and financially able buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of all the uses to which the property is adapted and for which it is capable of being used.

*Id.* Furthermore, property appraisals shall be administered to include "any other factors that may affect [the] value [of the property]." N.C. Gen. Stat. § 105-317(a)(1) (1992) (addressing "true value of land"); G.S. § 105-317(a)(2) (concerning "true value of a building or other improvement"); *see also In re Appeal of Bosley,* 29 N.C. App. 468, 471, 224 S.E.2d 686, 688, *disc. review denied,* 290 N.C. 551, 226 S.E.2d 509 (1976).

The function of the Commission is to "hear and decide appeals from decisions concerning the listing, appraisal, or assessment of property made by county boards of equalization and review. . . ." N.C. Gen. Stat. § 105-290(b) (1992 & Cum. Supp. 1993). In conducting such appeals, the Commission is to hear the "evidence and affidavits

offered by the appellant and appellee county . . . ." G.S. § 105-290(b)(2). Further, the Commission shall "determine the weight and sufficiency of the evidence and the credibility of the witnesses, . . . draw inferences from the facts, and . . . appraise conflicting and circumstantial evidence." *In re McElwee*, 304 N.C. 68, 87, 283 S.E.2d 115, 126-27 (1981). Finally, the Commission "shall make findings of fact and conclusions of law and issue an appropriate order" based on evidence considered at the hearing. G.S. § 105-290(b)(2).

In order to prevail upon appeal of an appraisal, an objecting taxpayer must produce "competent, material and substantial evidence" which tends to show:

(1) Either the county tax supervisor used an *arbitrary method* of valuation;

or

(2) the county tax supervisor used an *illegal method* of valuation;

AND

(3) the assessment *substantially* exceeded the true value in money of the property.

*In re Appeal of Amp, Inc.*, 287 N.C. 547, 563, 215 S.E.2d 752, 762 (1975) (citation omitted).

N.C. Gen. Stat. § 105-345.2 (1992) "is the controlling judicial review statute for appeals from the Property Tax Commission." *McElwee*, 304 N.C. at 74, 283 S.E.2d at 120. Under this section, the appellate court is to decide all relevant questions of law and interpret constitutional and statutory provisions to determine whether the decision of the Commission is, *inter alia,* affected by errors of law. *See* G.S. § 105-345.2(b). The statute also provides that we are to review "the whole record" in determining the foregoing, G.S. § 105-345.2(c); *see also In re Appeal of Ele, Inc.*, 97 N.C. App. 253, 256-57, 388 S.E.2d 241, 244, *aff'd per curiam*, 327 N.C. 468, 396 S.E.2d 325 (1990), and "due account shall be taken of the rule of prejudicial error." G.S. § 105-345.2(c).

Additionally, certain other principles apply: (1) a reviewing court is neither free to weigh the evidence presented to the Commission nor to substitute its own evaluation of the evidence for that of the Commission; (2) *ad valorem* tax assessments are presumed to be correct; (3) "the correctness of tax assessments, the good faith of tax

assessors and the validity of their actions are presumed;" and (4) the taxpayer bears the burden of showing that the assessment was erroneous. *McElwee*, 304 N.C. at 75, 283 S.E.2d at 120 (citations omitted).

Having set out the applicable legal principles, we now proceed to a consideration of the issue presented *sub judice*. We emphasize the question is *not* whether asbestos contamination is properly a factor to be considered in determining the "true value" of real property. At least by implication, that subject has previously been addressed by our appellate courts. *See In re Valuation*, 282 N.C. 71, 79, 191 S.E.2d 692, 697 (1972) (economic blight affecting city downtown area where property located must be taken into account); *see also In re Appeal of Camel City Laundry Co.*, 115 N.C. App. 469, 472, 444 S.E.2d 689, 691 (1994) ("cost to conduct environmental remediation" on property affected by chemical pollutants noted to "play a part" in the price offered by a buyer for property).

Rather, the precise issue herein is whether the Commission erred as a matter of law by not considering evidence of a factor allegedly affecting the "true value" of taxpayer's property for a given year but which factor taxpayer failed to make known to the County. Under the circumstances of the case *sub judice*, we believe the Commission was not required to take such evidence into account.

Once real property has been appraised for taxation, it continues to be listed at the appraised valuation figure until next formally appraised, *see* G.S. § 105-286(c), or unless that figure is modified on the basis of justifiable cause. *See, e.g.*, N.C. Gen. Stat. §§ 105-287 (a)(3), (b) (1992) (assessed value "shall" be increased or decreased to "[r]ecognize an increase or decrease in the value of the property resulting from a factor" other than normal physical depreciation, economic changes affecting county in general, or certain specified betterments). The General Assembly has thus intentionally authorized local taxing authorities, "*when requested so to do*," *In re Pine Raleigh Corp.*, 258 N.C. 398, 401, 128 S.E.2d 855, 857 (1963) (emphasis added), to correct any "unjust [or] inequitable assessment." *Id.* (referring to similar provisions of earlier version of G.S. § 105-287).

If a property owner believes an appraisal is inaccurate, "be the [inaccuracy] deliberate, an error in judgment, or caused by a misconception of the law," *King v. Baldwin*, 276 N.C. 316, 326, 172 S.E.2d 12, 18 (1970), or that the property has changed in value resulting from a statutorily recognized factor, the taxpayer must initially "complain to the county board of equalization and review and request a hearing."

*Id.* at 326, 172 S.E.2d at 18-19. While there is thus an affirmative duty upon the taxing authority to reappraise property if statutorily enumerated circumstances exist, *In the Matter of Appeal of Butler*, 84 N.C. App. 213, 219, 352 S.E.2d 232, 235, *disc. review denied*, 319 N.C. 673, 356 S.E.2d 775 (1987), the burden of proof is on the taxpayer to establish the presence of such conditions. *Id.* (quoting *Amp*, 287 N.C. at 562, 215 S.E.2d at 761-62). Following a hearing before the county board of equalization and review, any property owner who excepts to the board's order may appeal therefrom to the Property Tax Commission. G.S. § 105-290(b). The requisite notice "shall be in writing and *shall state the grounds for the appeal.*" G.S. § 105-290(f) (emphasis added).

In the case *sub judice*, Pines has failed to show the Commission erroneously concluded that the County's appraisal was neither *arbitrary* nor *illegal.* Indeed, the appraisal was conducted according to accepted methods (Pines' only exception to the County's methodology being that buildings with similar asbestos contamination were not utilized as comparables), and was based upon all the information available to the County on the relevant date. The statutory scheme provides for the correction of errors in the initial appraisal by making available appeal to the local board of equalization and review, and by mandating reappraisal in certain enumerated circumstances. *See* G.S. § 105-287; *see also In re Appeal of Broadcasting Corp.*, 273 N.C. 571, 577-78, 160 S.E.2d 728, 732-33 (1968); *Pine Raleigh Corp.*, 258 N.C. at 401, 128 S.E.2d at 857. The obvious purpose of such a procedure is to provide opportunity at the local level to deal with taxpayer-presented information and to modify appraisals as such information requires before any appeal need be heard by the Commission.

However, the record herein reflects that Pines, neither at the Board proceeding nor in its Application for Hearing to the Commission, *see* G.S. § 105-290(f), made any reference to asbestos contamination nor indicated that the existence of asbestos was a factor it relied upon in seeking adjustment of the County appraisal. It instead sought adjustment exclusively on the basis of "excessive expenses and low rents," despite the fact the presence of asbestos appears to have been known by Pines prior to the Board hearing and was confirmed by two subsequent reports in September and December 1991. This knowledge of Pines notwithstanding, only in April 1992 did Pines' representative reveal it to the County appraiser who by chance was on the property in preparation for testifying before the Commission. The County was furnished no other notification. Moreover, it

was not until immediately prior to appearing before the Commission that Pines moved to amend its application to reflect a valuation which incorporated asbestos contamination; yet even in that motion Pines failed to mention specifically any asbestos problem.

Under the foregoing circumstances, we are unable to discern any error in the Commission's determination that the County acted neither arbitrarily nor illegally in using traditional methods to assess the property based upon information it possessed. We further find the Commission acted properly in not considering evidence of a condition alleged to affect "true value" which, despite knowledge of its existence by taxpayer, was neither presented to the County at the time of Pines' appearance before the Board of Equalization and Review for 1991, nor stated in Pines' Application for Hearing to the Commission, nor conveyed to the County within the tax year in question.

Our analysis finds support by way of analogy in a recent decision of this Court. In *Kinro, Inc. v. Randolph County*, 108 N.C. App. 334, 423 S.E.2d 513 (1992), the plaintiff manufacturing company filed suit pursuant to N.C. Gen. Stat. § 105-381(c)(2) (1992) seeking refunds for taxes allegedly overpaid as the result of an unjust tax assessment. We affirmed summary judgment entered in favor of defendant county, holding that Kinro had failed to follow the statutory procedures for disputing a paid property tax. *Id.* at 337-38, 423 S.E.2d at 515. G.S. § 105-381(a)(3) requires a taxpayer demanding refund of paid taxes to submit to the local governing body "a written statement of his [valid] defense [as set out in G.S. § 105-381(a)(1)]" as well as a request for refund. Kinro had made no such assertion in its initial letter to the county protesting the valuation of certain property, and was therefore unable to proceed against the county under the statute. *Id.*; *see also Johnston v. Gaston County*, 71 N.C. App. 707, 711, 323 S.E.2d 381, 383 (1984), *disc. rev. denied*, 313 N.C. 508, 329 S.E.2d 392 (1985). The *Kinro* panel did not specifically point out that the statutory provision was undoubtedly intended to provide the county an opportunity to rectify any error before institution of litigation, and that for this reason the basis of taxpayer's contention of defense must clearly be conveyed to the county so that it might grant relief if required. However, the Court did note that upon the demand for refund and assertion of statutory defense not being "resolved in the taxpayer's favor, [it] may *then* bring a civil action to compel a refund." *Kinro*, 108 N.C. App. at 337, 423 S.E.2d at 515 (emphasis added) (citation omitted).

In this regard, "[o]ur courts have long recognized that the public interest demands questions relating to the base of taxable property be settled as cheaply and speedily as possible consistent with due process." *In re Forestry Foundation*, 35 N.C. App. 414, 425, 242 S.E.2d 492, 499 (1978) (citation omitted), *aff'd*, 296 N.C. 330, 250 S.E.2d 236 (1979). Both the public policy enunciated here as well as due process support the existence of an obligation on the part of an objecting taxpayer to notify the county at the earliest opportunity of its grounds for challenging an appraisal.

Under the facts of the instant case, we need not rule on the specific occurrence of the foregoing time of opportunity—be it the effective date of appraisal, the date of proceedings before the local Board, the date of filing of Application for Hearing with the Commission, or simply within the tax year itself. As previously indicated, the record reflects no notification of the County by Pines at any of these junctures that asbestos contamination was present in complex buildings and that Pines was relying upon asbestos contamination as a factor affecting appraised value.

However, we do hold that the statement regarding asbestos to the County's appraiser nearly sixteen months after the effective date of appraisal and almost four months following conclusion of the tax year in question, as well as the proffer of asbestos contamination evidence at the 16 July 1992 hearing before the Commission, came too late to qualify as proper and timely notification.

In so holding, we are advertent to the fact that hearings before the Commission are *de novo, id.*; *see also Butler*, 84 N.C. App. at 218, 352 S.E.2d at 235, as well as to the fact the Commission meets on a limited basis. *See* N.C. Gen. Stat. § 105-288(e) (1992). Nonetheless, these considerations are outweighed by the presumptions in favor of the taxing authority, the burden assumed by an objecting taxpayer, and the legislative intent to require local authorities to adjust tax appraisals under proper circumstances without formal proceedings *upon adequate notice* from the taxpayer. *See Pine Raleigh Corp.*, 258 N.C. at 401, 128 S.E.2d at 857. As stated above, the notice given the County here was neither adequate, formal, nor sufficiently timely.

While we thus approve, on grounds of lack of timely notice to the County, the Commission's refusal to consider evidence of asbestos contamination, we do not find it necessary to consider for purposes of this opinion the propriety of the Commission's basis for its ruling as set out in Conclusion No. 3 contained in the Final Decision. Having

held the Commission reached the proper conclusion, albeit based upon different reasoning, we determine its decision was unaffected by any prejudicial error. *See, e.g., Eways v. Governor's Island,* 326 N.C. 552, 554, 391 S.E.2d 182, 183 (1990) ("Where a trial court has reached the correct result, the judgment will not be disturbed on appeal even where a different reason is assigned to the decision.") (citations omitted); *see also* G.S. § 105-345.2(c). Accordingly, the Final Decision of the Property Tax Commission is affirmed.

Affirmed.

Judges ORR and LEWIS concur.