IN THE MATTER OF: THE APPEAL OF CAMEL CITY LAUNDRY COMPANY FROM THE APPRAISAL OF CERTAIN REAL PROPERTY BY THE FORSYTH COUNTY BOARD OF EQUALIZATION AND REVIEW FOR 1990

No. COA95-749

(Filed 16 July 1996)

**1. Taxation § 79 (NCI4th)— contaminated property—reappraisal in nonreappraisal year**

The North Carolina Property Tax Commission properly concluded that a nonreappraisal year valuation was justified where the Commission found that the extent of subsurface soil and shallow groundwater contamination was not known as of the date of the last regular appraisal. N.C.G.S. § 105-287.

**Am Jur 2d, State and Local Taxation § 20.**

**Valuation for taxation purposes as admissible to show value for other purposes. 39 ALR2d 209.**

**2. Evidence and Witnesses § 672 (NCI4th)— Property Tax Commission—rehearing after appeal—objection to additional evidence**

The North Carolina Property Tax Commission did not err in receiving additional evidence of the value of contaminated property where, following the mandate on remand after an appeal, the Commission allowed the property owner, Camel City, to offer additional evidence, the County objected, the Commission then continued the hearing, and the County elected to offer its own additional evidence. The County cannot now be heard to complain about the receipt of Camel City's additional evidence.

**Am Jur 2d, Trial §§ 734, 735, 737.**

## IN RE APPEAL OF CAMEL CITY LAUNDRY CO.

[123 N.C. App. 210 (1996)]

3. **Taxation § 82 (NCI4th)— contaminated real property— valuation**

The North Carolina Property Tax Commission acted within its authority in valuing property with contaminated subsurface soil and ground water at $430,872 and this value was supported by competent, material and substantial evidence even though the property owner (Camel City) contended that the value was $0.00. The Commission was presented with two vastly different estimates of the tax value of the subject property and, apparently placing greater weight on the County's income-approach "value in use" method of valuing the property, concluded that the County properly considered the affects of the contamination in its appraisal of the "true value in money" of the property. The function of determining the weight and sufficiency of the evidence and the credibility of the expert witnesses presented by the parties belonged exclusively to the Commission and Camel City has not shown that the County's method of valuing the property was illegal or arbitrary or that the County's assessment exceeded the true value in money of the property.

**Am Jur 2d, State and Local Taxation § 20.**

**Valuation for taxation purposes as admissible to show value for other purposes. 39 ALR2d 209.**

Appeal by petitioner Camel City Laundry Company from final decision entered 24 January 1995 by the North Carolina Property Tax Commission. Heard in the Court of Appeals 21 March 1996.

*Stern, Graham & Klepfer, L.L.P., by James W. Miles, Jr. and William A. Eagles, for petitioner-appellant.*

*Office of the Forsyth County Attorney, by Bruce E. Colvin, for respondent-appellee.*

WALKER, Judge.

Appellant Camel City Laundry Company (Camel City) is the owner of certain property located in Forsyth County at 501 East Third Street, Winston-Salem, North Carolina (Tax Block 40, Lot 301). The property measures 53,600 square feet (1.23 acres) and contains a 25,486-square-foot building and a paved parking lot with 56 spaces.

Prior to Camel City's acquisition of the property, the property was successively owned by Winston-Salem Gas and Lighting Company,

IN RE APPEAL OF CAMEL CITY LAUNDRY CO.

[123 N.C. App. 210 (1996)]

Duke Power Company, and Piedmont Natural Gas Company, all of whom used the property as an industrial site. Upon acquiring the property, Camel City used it as a commercial dry-cleaning/laundry processing plant until 1989, when Camel City converted the property into office space and a laundry and customer service facility.

Effective 1 January 1988, as part of its county-wide reappraisal of real property pursuant to N.C. Gen. Stat. § 105-286, appellant Forsyth County (the County) valued the subject property for tax purposes at $639,000. In 1989, Camel City received an offer to purchase the subject property for $750,000, contingent upon a satisfactory environmental assessment. Two ensuing assessments revealed that both the subsurface soil and the shallow groundwater table were contaminated by pollutants. Although Camel City's operations contributed to the contamination, the primary source was the coal gasification plant operated by the property's previous owners. There was no evidence that the contamination negatively affected the building's interior or the parking lot.

[1] On 29 May 1990, Camel City requested that the Forsyth County Board of Equalization and Review for 1990 (the Board) review the $639,000 ad valorem tax value placed upon the subject property, alleging that due to the contamination, the true value of the property was $0. 1990 was a non-reappraisal year. However, N.C. Gen. Stat. § 105-287 (1995) gives the Commission the authority to change the appraised value of real property in a non-reappraisal year under certain enumerated circumstances. The Commission's [Second] Final Decision found that "[t]he extent of the contamination affecting the property was not known to either the County or the Taxpayer as of 1 January 1988 [the date of the last regular appraisal], but was known as of 1 January 1990." We agree with the Commission's conclusion that this fact justified a non-reappraisal year valuation.

On 22 January 1991, the Board heard Camel City's request to review the $639,000 assessed tax value of the property and unanimously decided to make no change. Camel City appealed this decision to the North Carolina Property Tax Commission (the Commission). On 12 November 1992, the Commission, sitting as the State Board of Equalization and Review, heard Camel City's appeal of the Forsyth County Board's decision. On 23 April 1993, the Commission rendered its Final Decision, assigning a value of $125,000 to the property for the year 1990. The County appealed to this Court.

**IN RE APPEAL OF CAMEL CITY LAUNDRY CO.**

[123 N.C. App. 210 (1996)]

On 5 July 1994, the Court of Appeals issued its opinion reversing and remanding the Commission's Final Decision. *In re Appeal of Camel City Laundry Co.*, 115 N.C. App. 469, 444 S.E.2d 689 (1994) (*Camel City I*). The Court held that in reducing the tax value of the property, the Commission acted improperly by relying upon factors concerning the contamination of the property "without linking them to the price a buyer would pay for the property, which is the statutorily-required measure of true value." *Id.* at 472-73, 444 S.E.2d at 691. Concluding that the Commission's Decision exceeded its statutorily mandated authority and was unsupported by competent evidence, the Court reversed and remanded "so that the Commission [could] consider appropriate evidence of the property's true value as defined by N.C. Gen. Stat. § 105-283." *Id.* at 473, 444 S.E.2d at 692.

Upon remand, the Commission held a further hearing on Camel City's appeal of the Forsyth County Board's decision of January 1991. The Commission received additional evidence from both parties. On 24 January 1995, the Commission issued its [Second] Final Decision, reducing the tax value of the subject property from $639,000 to $430,872. It is this Decision which is the subject of Camel City's present appeal.

The standards for judicial review of decisions of the North Carolina Property Tax Commission are set forth in N.C. Gen. Stat. § 105-345.2(b) (1995). Under this section, the appellate court is to decide all relevant questions of law and interpret constitutional and statutory provisions to determine whether the Commission's decision is lawful. *MAO/Pines v. New Hanover County Bd. of Equalization*, 116 N.C. App. 551, 556, 449 S.E.2d 196, 199 (1994). In conducting its review, this Court must consider "the whole record" and take "due account . . . of the rule of prejudicial error." *Id.* at 556, 449 S.E.2d at 199-200. However, this Court may not reweigh the evidence or substitute its own evaluation of the evidence for that of the Commission. *Id.* at 556, 449 S.E.2d at 200 (*citing In re McElwee*, 304 N.C. 68, 75, 283 S.E.2d 115, 120 (1981)).

N.C. Gen. Stat. § 105-283 (1995) provides that "[a]ll property, real and personal, shall as far as practicable be appraised or valued at its true value in money." The statute defines "true value" as

market value, that is, the price estimated in terms of money at which the property would change hands between a willing and financially able buyer and a willing seller, neither being under any

IN RE APPEAL OF CAMEL CITY LAUNDRY CO.

[123 N.C. App. 210 (1996)]

compulsion to buy or sell and both having reasonable knowledge of all the uses to which the property is adapted and for which it is capable of being used.

*Id.* In determining the true value of property, the person making the appraisal must also consider "any other factors that may affect its value." N.C. Gen. Stat. § 105-317(a)(1) (1995) (factors to be considered in determining "true value of land"); N.C. Gen. Stat. § 105-317(a)(2) (1995) (factors to be considered in determining "true value of a building or other improvement"). The Commission shall " 'determine the weight and sufficiency of the evidence and the credibility of the witnesses, . . . draw inferences from the facts, and . . . appraise conflicting and circumstantial evidence.' " *MAO/Pines,* 116 N.C. App. at 556, 449 S.E.2d at 199 (*quoting McElwee,* 304 N.C. at 87, 283 S.E.2d at 126-27).

It is well-settled in North Carolina that a county's ad valorem tax assessments are presumed to be correct. *In re Appeal of Amp, Inc.,* 287 N.C. 547, 562, 215 S.E.2d 752, 761 (1975). However, a taxpayer may rebut this presumption by producing " 'competent, material and substantial' evidence that tends to show that: (1) Either the county tax supervisor used an *arbitrary method* of valuation; or (2) the county tax supervisor used an *illegal method* of valuation; AND (3) the assessment *substantially* exceeded the true value in money of the property." *Id.* at 563, 215 S.E.2d at 762 (citation omitted) (emphasis in original).

Camel City makes two arguments before this Court: (1) that the Commission "erred and exceeded its statutory authority by not valuing the property at its true value in money as of January 1, 1990," and (2) that the Commission erred in concluding that the cost to clean up the contamination should be discounted to the end of the useful life of the building located on the property.

A clear understanding of the respective positions of the parties as to the true value of the subject property is essential to a proper resolution of Camel City's contentions. We therefore briefly summarize the evidence of value offered by each party.

At the first hearing before the Commission, Camel City stipulated that $639,000 did not exceed the unimpaired value of the subject property. At that hearing, Camel City's expert appraisal witness, John McCracken, did not express an opinion as to the impaired value of the property for any year. However, Camel City did present evidence that

IN RE APPEAL OF CAMEL CITY LAUNDRY CO.

[123 N.C. App. 210 (1996)]

(1) the property is contaminated; (2) the cost of remediation (clean-up) is estimated to be in excess of $500,000; (3) there have been no sales of severely contaminated property; (4) Camel City has ceased using the property as a laundry and dry-cleaning facility; and (5) Camel City has tried unsuccessfully to sell or lease the property.

[2] At the further hearing, following this Court's mandate in *Camel City I*, the Commission allowed Camel City to offer additional evidence of the true value in money of the property. The County objected, and the Commission continued the hearing to allow the County to respond to Camel City's evidence. The County then elected to offer its own additional evidence of the true value of the property. Thus, the County cannot now be heard to complain about the receipt of Camel City's additional evidence of value, and we reject the County's argument on appeal (erroneously denominated a "cross-assignment of error") that the Commission erred in receiving such evidence.

[3] At the second hearing, Mr. McCracken again testified for Camel City and expressed his opinion that the market value of the property is $0. Mr. McCracken testified that he arrived at his appraisal of the unimpaired value of the property using both the cost method and the income method of valuation. He determined the unimpaired value to be $505,000. He then determined the present value of the future remediation costs, which he estimated at $584,000 as of the date of valuation. Subtracting the present value of remediation costs from the unimpaired value of the property, Mr. McCracken concluded that the impaired value of the property was -$79,000 as of 1 January 1990.

The County's position at the first hearing was that the tax value of the property was unaffected by the contamination. However, at the further hearing, the County adjusted its appraisal, presumably in response to the following language from *Camel City I*:

The Machinery Act does not provide for consideration of property's income-producing ability nor for the cost to conduct environmental remediation on the property in determining property value. This is not to say that these factors do not play a part in the value of the property. No doubt a buyer would take them into account when deciding upon a price to offer for the property.

*Camel City I*, 115 N.C. App. at 472, 444 S.E.2d at 691. The County maintained its original position that the unimpaired value of the property was $639,000, but then calculated an impaired value to account

for the contamination. In arriving at this impaired value, the County's expert appraiser, John Potter, applied the income approach "value in use" method of valuation. Using a 15.1% capitalization rate which included an additional risk factor of 4% for stigma and non-liquidity, Mr. Potter arrived at an indicated capitalized value of $477,020. Assuming that the useful life of the building on the property was 25 years, Mr. Potter then amortized an estimated $500,000 in remediation costs over that period, resulting in an indicated present value of remediation costs of $46,148. Subtracting the present value of remediation costs from the indicated capitalized value, Mr. Potter arrived at a "value in use" of $430,872. This value was ultimately adopted by the Commission.

Camel City concedes that where a sales approach to valuation is impractical due to the unavailability of data on comparable sales, other methods of valuation, including the income approach, are acceptable in determining fair market value for tax purposes. *See, e.g., In re Southern Railway*, 313 N.C. 177, 185, 328 S.E.2d 235, 241 (1985). However, Camel City argues that under any approach to arriving at market value, the valuation must be conducted from the standpoint of a willing buyer. *Id.* at 188, 328 S.E.2d at 243; *see also Camel City I*, 115 N.C. App. at 472-73, 444 S.E.2d at 691. Camel City contends that the County's method of valuation is fatally flawed because it fails to acknowledge the lack of willing buyers of the subject property.

We cannot accept Camel City's argument that its property has no value for tax purposes simply because Camel City has been unable to find a buyer for the property. As we have noted, "true value in money" is defined by statute as the price a *willing buyer* would pay a willing seller for the property where neither is obligated to buy or sell. N.C. Gen. Stat. § 105-283 (1995). "The willing buyer, however, is a hypothetical one in a hypothetical sale." *Inmar Associates, Inc. v. Borough of Carlstadt*, 518 A.2d 1110, 1114 (N.J. Super. Ct. App. Div. 1986) (decided under statute substantially similar to N.C. Gen. Stat. § 105-283), *affirmed in part, reversed in part on other grounds*, 549 A.2d 38 (N.J. 1988). Thus, Camel City's failure to successfully market the subject property does not dictate an ad valorem tax value of $0.

Moreover, the present and potential future use of the subject property dispel the notion that the property has no value for tax purposes. The evidence shows that the building located on the property is in fair condition and is capable of producing rental income. The

contamination does not affect the building or surrounding parking lot and presents no health hazard to people occupying the building. There is no indication that the contamination could not be satisfactorily cleaned up, either prior to sale or after sale, if a clean-up is eventually mandated. We can find no basis for assigning a tax value of $0 to this property when the contamination does not prevent the present or future owners from putting the property to its highest and best use. *See In re Appeal of Belk-Broome* Co., 119 N.C. App. 470, 473, 458 S.E.2d 921, 923 (1995) (important factor in determining market value is property's highest and best use), *affirmed*, 342 N.C. 890, 467 S.E.2d 242 (1996). *See also Boekeloo v. Board of Review*, 529 N.W.2d 275, 278 (Ia. 1995) (where evidence showed that contaminated property could be remediated and that plaintiff taxpayers were using the property for its intended purpose, plaintiffs' failure to obtain bids for remediation represented voluntary decision to remove property from market which could not form basis for assigning nominal tax value to property).

Of course, the contamination and the cost of remediation are factors to be considered in determining the price that the hypothetical willing buyer would pay for the subject property, and a valid appraisal would take these factors into account. Here, the County's expert appraiser did account for these factors by discounting the unimpaired value of the property for "stigma and non-liquidity" and by deducting the amortized cost of remediation.

This brings us to Camel City's contention that the Commission erred by amortizing the cost of remediating the property over the useful life of the building. The County presented evidence that the property was on the federal Comprehensive Environmental Response Compensation and Liability Information System (CERCLIS) list, meaning that it was identified as a possible priority site for remediation. However, as of the date of the hearing, Camel City had not been ordered to clean up the property, and it was not known if Camel City would ever be required to do so. Furthermore, there was no evidence that the subsoil contamination affected the use of the building or the parking lot. The County's expert appraiser, Mr. Potter, testified that he considered these facts in arriving at his estimate of the tax value of the subject property.

Mr. Potter testified that he valued the subject property using the income approach "value in use" method as recommended by the "Standard on the Valuation of Property Affected by Environmental

Contamination," published in 1992 by the International Association of Assessing Officers (hereinafter IAAO Standard). Mr. Potter's report, placed in evidence by the County, cited Clause 4.1 of the IAAO Standard, which states that with respect to contaminated property,

> [t]here is a tendency to discount [the unencumbered] value based on costs related to remediating or isolating the environmental contamination. Fully deducting the costs may overstate the decline in value, because the value in use concept would then be ignored. *Value in use suggests that a property which is still in use, or which can be used in the near future, has a value to the owner.* This would be true even if costs to cure environmental problems exceed the nominal, unencumbered value.

IAAO Standard, *supra,* Clause 4.1 (emphasis added). Mr. Potter's report further stated that according to Clause 4.2 of the IAAO Standard, even when clean-up costs are incurred, property may be able to maintain an income stream, so that "costs may be amortized over a longer period. This will increase debt, but not affect present worth on a dollar for dollar basis. *Costs may often be amortized over expected improvement life, and the present worth of the costs computed.*" IAAO Standard, *supra,* Clause 4.2 (emphasis added). Finally, the report cited Clause 8.1 of the IAAO Standard, which states that "[i]f some use exists, value must exist; property should be valued as if uncontaminated, and the present worth of amortized costs, which do not increase future efficiency and value, should be deducted." IAAO Standard, *supra,* Clause 8.1.

The Commission found that "[t]he County properly applied the income approach 'value in use' method and arrived at an indicated capitalized value of $477,020[,] using a 15.1 percent capitalization rate which included an additional risk factor of 4 percent for stigma and non-liquidity. . . ." The Commission further found that the useful life of the building is 25 years and that "[t]he remediation cost of $500,000 was properly amortized" over that period, "resulting in an indicated present value of remediation cost of $46,148. . . ." We are of the opinion that the County's evidence, including Mr. Potter's report and the IAAO Standard cited therein, amply supported the above findings.

In sum, the Commission was presented with two vastly different estimates of the tax value of the subject property: the $0 value presented by Camel City's expert, and the $430,872 value presented by the County's expert. The function of determining the weight and sufficiency of the evidence and the credibility of the expert witnesses

presented by the parties belonged exclusively to the Commission. *MAO/Pines*, 116 N.C. App. at 556, 449 S.E.2d at 199. Apparently placing greater weight on the County's income-approach "value in use" method of valuing the subject property, the Commission concluded that the County properly considered the effects of the contamination in its appraisal of the "true value in money" of the property. Camel City has not shown that the County's method of valuing the property was illegal or arbitrary or that the County's assessment exceeded the true value in money of the property. We hold that the Commission acted within its authority in valuing the property at $430,872 and that this value was supported by competent, material and substantial evidence. The decision of the Commission is therefore

Affirmed.

Judges JOHN and McGEE concur.