IN RE APPEAL OF PHOENIX LTD. PART. OF RALEIGH

[134 N.C. App. 474 (1999)]

IN THE MATTER OF: THE APPEAL OF PHOENIX LIMITED PARTNERSHIP OF RALEIGH FROM THE DECI-
SION OF THE WAKE COUNTY BOARD OF EQUALIZATION AND REVIEW CONCERNING THE VALU-
ATION OF CERTAIN REAL PROPERTY FOR THE TAX YEAR 1993

No. COA98-752

(Filed 3 August 1999)

### 1. Taxation— bankruptcy—stigma not on property

The Tax Commission did not err in its 1993 valuation of the taxpayer's property at $28,150,000 even though the taxpayer bought the property for $18,520,000 after the previous owner filed for Chapter 11 bankruptcy. The mismanagement of property by a business owner is not a proper reason to lower the property's value and any stigma resulting from the previous property owner's business failure and subsequent bankruptcy taints the prior owner, not the property.

### 2. Taxation— bankruptcy—actual sale price not true value

The Tax Commission did not err in failing to adopt the actual sale price of the property as its true value in money because the circumstances of this transaction, a bankruptcy sale, reveal the sale was not an arm's length transaction between a willing buyer and a willing seller.

Appeal by taxpayer from final decision entered 24 November 1997 by the North Carolina Property Tax Commission. Heard in the Court of Appeals 23 February 1999.

*C.B. McLean, Jr., for taxpayer-appellant.*

*Wake County Attorney's Office, by Assistant Wake County Attorney Shelley T. Eason, for appellee.*

LEWIS, Judge.

Appellant Phoenix Limited Partnership ("taxpayer") disputes the 1993 tax valuation of its property, a 29-story office tower known as Two Hannover Square and an adjacent three-story galleria, situated on 0.6221 acres of land in downtown Raleigh (collectively, "the property"). The property's initial 1993 valuation was $40,755,536, but this figure was reduced to $31,768,902 upon taxpayer's appeal to the Wake County Board of Equalization and Review ("the Board"). Taxpayer appealed this decision to the North Carolina Property Tax Commission ("the Commission"), which lowered the figure further to

$28,150,000. Seeking an even lower valuation, taxpayer now appeals to this Court.

There is no dispute that 1 January 1993 is the critical date for valuation purposes in this case. *See* N.C. Gen. Stat. § 105-285(d) (1997). In September of 1992, the owner of the property had filed for bankruptcy protection under Chapter 11. By the beginning of 1993, the property was no more than two years old and had but nineteen percent (19%) occupancy. The U.S. Bankruptcy Court approved the sale of the property to taxpayer in February of 1993 for $18,520,000. Taxpayer's central argument is that this figure more accurately reflects the value of the property than the $28,150,000 figure adopted by the Commission.

The Commission heard testimony from a number of witnesses using different valuation methods to arrive at possible values of the property. Ultimately, the Commission adopted the $28,150,000 value computed under a direct capitalization approach by J. Thomas Hester ("Hester"), an expert witness for Wake County. Taxpayer's first argument on appeal is a three-part contention that the Commission erred in adopting this value without correcting alleged factual and legal errors affecting Hester's computation.

We must first address this Court's standard of review for decisions of the Commission. Our statutes make the following provisions:

> (b) So far as necessary to the decision and where presented, the court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning and applicability of the terms of any Commission action. The court may affirm or reverse the decision of the Commission, declare the same null and void, or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions or decisions are:
>
> (1) In violation of constitutional provisions; or
>
> (2) In excess of statutory authority or jurisdiction of the Commission; or
>
> (3) Made upon unlawful proceedings; or
>
> (4) Affected by other errors of law; or

(5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted; or

(6) Arbitrary or capricious.

N.C. Gen. Stat. § 105-345.2(b) (1997). We make these determinations in light of the whole record, with due account taken of the rule of prejudicial error. N.C. Gen. Stat. § 105-345.2(c) (1997).

Taxpayer first notes that Hester presented two variations of the income approach in his appraisal: the direct capitalization approach, yielding a value of $28,150,000, and the discounted cash flow method, yielding a value of $29,790,000. The Commission adopted the former approach, despite Hester's testimony that it was less preferable than the latter. There is evidence to support each of these figures, and taxpayer's bare assertion that adopting the appraiser's disfavored method constitutes error is without merit. In light of our standard of review, we do not find this to be reversible error.

In the second part of its first argument, taxpayer claims the Commission failed to correct errors in Hester's testimony identified in a report by Martin & Associates, experts hired by taxpayer. Taxpayer cites no case law, statutes, or appraisal guidelines in support of its argument; instead, we are asked to reverse the Commission to resolve a disagreement between appraisers hired by adversarial parties. This we decline to do. The Commission was in a far better position to weigh the credibility of the witnesses and their methods, and we defer to its judgment. The testimony of both Hester and members of Martin & Associates had support in the record, and "[i]n the absence of case law to the contrary, we cannot say that the Commission erred in adopting the position of certain experts over that of others." *In re Appeal of Westinghouse Electric Corp.*, 93 N.C. App. 710, 716, 379 S.E.2d 37, 40 (1989).

The third part of taxpayer's first argument is that Hester ignored the "stigma" of bad business decisions and bankruptcy on the property in determining its appraisal value. The issue of this purported stigma is raised again in taxpayer's third main argument on appeal, that "the Commission erred by failing to consider the stigma affecting the property as required by N.C. Gen. Stat. § 105-317." Addressing these arguments together, we find them without merit.

Persons appraising a building have a statutorily imposed duty "to consider at least its location; type of construction; age; replacement cost; cost; adaptability for residence, commercial, industrial, or other

IN RE APPEAL OF PHOENIX LTD. PART. OF RALEIGH

[134 N.C. App. 474 (1999)]

uses; past income; probable future income; and any other factors that may affect its value." N.C. Gen. Stat. § 105-317(a)(2) (1997). Taxpayer claims the stigma of bankruptcy haunts this property and is a factor that affects its value, thus falling under the purview of G.S. § 105-317(a)(2). Taxpayer contends in its brief that Hester "offer[ed] his opinion that the stigma should not be considered in appraising the fee simple value of the property," citing the following exchange in the transcript:

> Q. Okay. But is it your opinion that this stigma is not a factor that should be considered in arriving at your estimate of value as of 1/1 of '93?
>
> A Well, I think technically speaking, if we're going to look at fee simple we would look at this building without the stigma, outside the stigma. *I can't say that that's what I've done. I think it's in there.*

(emphasis added). It appears to us from this testimony, then, that although Hester may have preferred to avoid considering the stigma of bankruptcy, he nevertheless considered it in his analysis. Hester cannot be faulted for failing to express in his testimony exactly how such a stigma can be quantified in light of the highly speculative nature of such an ethereal concept. Taxpayer's contention that Hester ignored the impact of any stigma on the property is without merit.

[1] Taxpayer directs us to no case in this state, and we have found none, which indicates that mismanagement of property by a business owner is a proper reason to lower the property's tax value. We agree with Wake County that "any stigma resulting from the property owner's business failure and subsequent bankruptcy taints the owner, not the property." The focus of G.S. § 105-317(a)(2) is on the property itself and not the business acumen of the parties involved in the development of the property. Taxpayer's attempts to analogize this situation to the stigma of environmental contamination in *In re Appeal of Camel City Laundry Co.*, 115 N.C. App. 469, 444 S.E.2d 689 (1994) and *In re Appeal of Camel City Laundry Co.*, 123 N.C. App. 210, 472 S.E.2d 402 (1996), *disc. review denied*, 345 N.C. 342, 483 S.E.2d 162 (1997), fail. Those cases involved real property affected by subsurface soil and groundwater contamination, rendering the property difficult to sell. Here, the issue of bankruptcy is clearly distinguishable, as it reflects mismanagement and has no bearing on the safety of or the cost to clean up the premises. By declining to further reduce the tax value of this property even lower than it did to reflect

the stigma of bankruptcy, the Commission wisely refused to set a standard of "penaliz[ing] the competent and diligent" by "reward[ing] the incompetent or indolent." *See In re Appeal of Greensboro Office Partnership*, 72 N.C. App. 635, 640, 325 S.E.2d 24, 26 (quoting *In re Pine Raleigh Corp.*, 258 N.C. 398, 403, 128 S.E.2d 855, 859 (1963)), *disc. review denied*, 313 N.C. 601, 330 S.E.2d 610 (1985). Furthermore, taxpayer's testimony at oral argument that the property is currently better occupied than it was before it became the subject of bankruptcy proceedings, when there could have been no stigma of bankruptcy, indicates to us that any stigma attached to the property is fading with time and good management.

**[2]** Taxpayer's second main argument on appeal is that the Commission erred by failing to adopt the actual sale price of the property as its true value in money on 1 January 1993. Taxpayer contends the sale of this property met the statutory requirements set out below:

All property, real and personal, shall as far as practicable be appraised or valued at its true value in money. When used in this Subchapter, the words "true value" shall be interpreted as meaning market value, that is, the price estimated in terms of money at which the property would change hands *between a willing and financially able buyer and a willing seller, neither being under any compulsion to buy or to sell* and both having reasonable knowledge of all the uses to which the property is adapted and for which it is capable of being used.

N.C. Gen. Stat. § 105-283 (1997) (emphasis added). The Commission indicated in its findings of fact that the circumstances of this case precluded the sale of the property to taxpayer from establishing the fair market value of the property. Based on our review of the whole record, we agree with the Commission.

Taxpayer contends in its brief that this was "an arm's length sale between a willing and financially able buyer and a willing seller, neither under any compulsion to buy or to sell," just two pages after arguing that there was a stigma on the property because it "ha[d] been so poorly received by the marketplace that the owner [was] forced into bankruptcy filing . . . ." These assertions are inherently contradictory. Furthermore, evidence before the Commission supported Hester's testimony that this bankruptcy sale was not an arm's length transaction. Interest on fully secured claims was accruing at a rate of

$1,000 a day and the Carolina Power and Light Company was threatening to disconnect power on the property. Time was of the essence in the sale, and the buyer was required to provide full consideration entirely in cash. A bid higher than taxpayer's was made but rejected because the debtor would have had to seek additional financing if the process was delayed even two weeks while the new bid was confirmed. While we need not reach the question of whether a sale in a Chapter 11 bankruptcy proceeding is ever an arm's length transaction, it seems clear to us under the facts and circumstances of this transaction that this sale was not between a willing buyer and a willing seller as contemplated by the statute and therefore was not indicative of the property's true value in money under G.S. § 105-283. As such, the Commission did not err by reviewing the opinions of appraisers when determining the value of the property.

Taxpayer's final argument is a general contention that the Commission's decision to value the property at $28,150,000 "is in violation of constitutional provisions or affected by errors of law or unsupported by competent, material, and substantial evidence in view of the entire record as submitted or arbitrary or capricious." In light of our review of the whole record under the provisions of our statutes and the analysis set out above, we find this argument without merit.

Affirmed.

Judges GREENE and HORTON concur.